[Cite as *State v. Zachary*, 2021-Ohio-2176.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

ANTHONY ZACHERY, SR.,

        Defendant-Appellant.

CASE NO. 2019-T-0082

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00412

**O P I N I O N**

Decided: June 28, 2021
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Lynn Maro*, Maro & Schoenike, Co., 7081 West Boulevard, Suite 4, Youngstown, OH 44512 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Anthony Zachery, Sr., appeals from his convictions for Felonious Assault, Domestic Violence, and Resisting Arrest in the Trumbull County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On June 10, 2019, Zachery was indicted by the Trumbull County Grand Jury for the following: Domestic Violence, a felony of the third degree, in violation of R.C. 2919.25(A) and (D)(1) and (4); Felonious Assault, a felony of the second degree, in

violation of R.C. 2903.11(A)(2) and (D)(1)(a); and Resisting Arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A) and (D).

{¶3} A jury trial was held on September 16 and 17, 2019. The following pertinent testimony was presented:

{¶4} Christina Oller, Zachery's girlfriend for three and a half years, testified that the two lived together and had an intimate relationship. On April 30, 2019, Oller had just returned to their home after being released from the "psych ward" following an incident in which she had been raped and became suicidal. On April 30, Zachery and Oller argued about whether she was being truthful about the rape. According to Oller, he yanked her by her hair and dragged her through a few rooms, ripping her shirt and pants. He said he wanted to "show [her] what rape really looks like." He punched or slapped her in the chest, stomach, and head. In the kitchen, he put a knife up to her throat and had her pinned on the floor. When he put the knife down, she ran to the bathroom where Zachery busted the door open. He took her to the kitchen and made her answer questions about the rape, continuing to hit her, placing a chair on her, and lunging at her.

{¶5} According to Oller, following the incident, Zachery purchased alcohol, which he made her drink and had her text message people to obtain crack. During that time, she messaged a friend, Catherine Morton, stating: "Call the cops now. He beat me to death" and "He hurt me and I'm scared he's going to kill me." When the police arrived, she hid pursuant to Zachery's instruction but then peeked out and waved until the police saw her. She refused to go to the hospital but suffered bruises to her face and breast and had black eyes. After Zachery was arrested, she moved into a battered women's shelter called Someplace Safe. She testified that he had been physical with her in the

2

past. Oller testified that she sent Zachery a message in jail saying she was not telling the police anything happened and that she wanted to know he was ok. She explained she sent this message because she still loved him.

{¶6} Catherine Morton received the aforementioned text messages from Oller on April 30 around 7:30 p.m. and called the police. She did not know the address but conveyed to them the general vicinity of the house. She subsequently received a call from Oller who said the police were at her house. Oller was whispering and said she was hiding.

{¶7} Officer Justin Fenstermaker of the Warren City Police Department was dispatched to the incident following the 911 call. He testified that, from the physical description provided of the house and its location across from a Rite Aid on Parkman Road, as well as prior calls to that location, he responded to Zachery's residence. He also knew Oller to be associated with that location. He indicated past calls had related to domestic violence as well as "disturbances." He also testified that he was familiar with Zachery, had personally arrested Zachery for domestic violence in that residence with Oller as the victim and that in his past dealing with Zachery, he had resisted arrest.

{¶8} Upon arriving at the home, Zachery told Fenstermaker his girlfriend was not there. Fenstermaker saw Oller inside the house wave and then return back to where he believed she had been hiding, which he took as a sign she was in danger. He informed Zachery he was being detained and there was a struggle between Zachery, Fenstermaker, and another officer, Joseph Wilson. Zachery did not listen to commands or put his hands behind his back. A dash cam video was played which showed discussion between the two officers and Zachery. Fenstermaker stated that he saw "her" inside.

3

The officers grabbed Zachery's arm, he struggled, and they advised he was being "detained." He continued to pull away from them for a period of time until they stated they would use a taser.

{¶9} After Zachery was handcuffed, Fenstermaker went inside and observed bruises on Oller's face and redness and bruises on her chest and neck area, as well as a cut on her neck. She was crying and breathing fast and heavy. He observed the door to the bathroom was broken. He did not recall seeing any marks on Zachery's hands and did not recover a knife from the residence. After speaking with Oller, he exited the residence and took Zachery from the front porch to a police car.

{¶10} The State presented judgment entries of prior convictions and questioned Fenstermaker about these entries. Zachery's counsel did not object to the admission of the entries except to challenge whether the State had demonstrated they pertained to his client. Fenstermaker confirmed that Zachery had a Domestic Violence conviction in 2000 and an accompanying charge for Violating a Protection Order. Fenstermaker confirmed that there was a second Domestic Violence conviction in 2001 accompanied by a charge for resisting arrest. The judgment entries also showed a companion case in which Zachery was convicted of Endangering Children. Fenstermaker confirmed entries showing Domestic Violence convictions in 2007, 2012, two in 2015, and in 2018. Fenstermaker testified that the victim in 2018, as indicated by the complaint attached to the judgment of conviction, was Oller. Fenstermaker testified that the paperwork showed Zachery's name, address and identifying information that enabled him to know it related to the present defendant.

{¶11} Officer Wilson backed up Fenstermaker on the April 30 call. While speaking

4

with Zachery, who said his girlfriend was not there, Fenstermaker stated that he saw Oller "around the corner." They then told Zachery he was being detained, and he "fought us. He backed us into the screen door, and I believe the window might have popped out from us slamming into it." The two officers discussed using a taser, Wilson drew his taser and Zachery stopped fighting, sat down and was handcuffed. When Wilson subsequently observed Oller, he believed she had been assaulted and "it was pretty bad." He advised Oller to go to the hospital for x-rays because her face was so swollen he believed she may have a fracture. Oller said she was afraid of retaliation and did not want Zachery charged. The State inquired: "Based on your training, education, and experience, did Mr. Zachery resist his arrest on that night?" to which Wilson responded affirmatively.

{¶12} Linda Baer, a program manager at Someplace Safe which provides services to domestic violence victims and emergency shelter, testified that Oller came to stay on May 4, 2019, and had two black eyes and her breast had very bad bruising. According to Baer, Oller had been there about six times over the past two years.

{¶13} Zachery testified that on April 30, he was speaking with Oller about her stealing his mother's identity and inconsistencies in her statement about being raped. He testified that she pulled her own hair, stood up, said she was going to kill herself, and ran toward the bathroom. He chased her, she shut the door, and he charged through it. The door broke and hit her in the eye. He helped her get into bed, the chair was on the bed, and it rolled over on her. Afterward, he obtained alcohol, which she had asked for, and she began drinking. Twenty minutes later, she fell down, he tried to catch her, and his hand hit her chest. He testified she had also taken some prescription pain pills and appeared as though she was passing out. After they sat on the couch for awhile, she

5

communicated with someone trying to get crack and then about a half an hour later, the police pulled in and she went to the back room and said "I'm not here." He testified that police had previously been called to the residence approximately four times, often when nothing had happened. He admitted he had been convicted of Domestic Violence before, a couple of times when he was a drug addict and could not control himself. He denied punching or kicking Oller or holding a knife to her throat on April 30.

{¶14} On cross-examination, the State inquired whether Zachery was a convicted felon, specifically for drug charges, to which he responded affirmatively. He denied being responsible for that offense. He was asked if he committed the various Domestic Violence offenses previously described. He explained that he "had to take the charge" in 2000. When asked if he disputed the 2001 conviction, he testified that he was a drug addict then. He was asked if he disputed the 2007 conviction to which he said no. As to the 2012 conviction, he stated "I had no choice but to take some of these cases." He agreed that he was the defendant in all of the domestic violence cases addressed and was convicted.

{¶15} The jury found Zachery guilty of the three charges as contained in the indictment.

{¶16} A sentencing hearing was held on October 15, 2019. The court found that Felonious Assault and Domestic Violence merged and ordered Zachery to serve a prison term of five to seven and a half years for Felonious Assault and 60 days for Resisting arrest, to run concurrently. This sentence was memorialized in a November 5, 2019 Entry on Sentence.

{¶17} Zachery timely appeals and raises the following assignments of error:

6

Case No. 2019-T-0082

{¶18} "[1.] It was plain error for the trial court to allow the admission of other acts evidence which deprived appellant of a fa[i]r trial in violation of the Fourteenth Amendment of the United States Constitution and Ohio Constitution, Art. I § 1, 2, 10, and 16.

{¶19} "[2.] The state's repeated efforts to ask jurors to place themselves in the victim's shoes denied appellant a fair trial and undermined the confidence and reliability [of] the verdict in violation of the rights and liberties se[c]ured by the Sixth and Fourteenth Amendments and Ohio Constitution, Article I, § 2, 10, and 16.

{¶20} "[3.] The use of prior misdemeanor convictions for impeachment purposes is improper and undermines appellant's right to a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Const. Art. 1, § 2, 10, and 16.

{¶21} "[4.] The failure of trial counsel to offer a stipulation regarding prior convictions that were admissible for purposes of elevating the level of offense constitutes ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Ohio Const. Art. I, §§ 1, 2, 10, and 16.

{¶22} "[5.] Zachery was denied due process and the effective assistance of counsel when trial counsel failed to object to prejudicial voir dire, other acts evidence and closing arguments in violation of liberties guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Art. I, §§1, 2, 10, and 16.

{¶23} "[6.] The state failed to present sufficient evidence to sustain a conviction for resisting arrest or felonious assault thereby depriving appellant of the liberties secured

7

Case No. 2019-T-0082

by the Fourteenth Amendment to the United States Constitution and Ohio Const., Art. I, § 16.

{¶24} "[7.] The trial court erred when it allowed the prosecutor to question witnesses about the ultimate issue and express an opinion on the ultimate issue, whether Zachery committed the indicted offenses in violation of the liberties guaranteed by [the] Fourteenth Amendment and Article I, § 16 of the Ohio Constitution.

{¶25} "[8.] The cumulative effect of the errors deprived Zachery of a fair trial in violation of the rights and liberties secured by the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Art. I, § 1, 2, 16."

{¶26} In his first assignment of error, Zachery argues that the trial court erred in admitting evidence of irrelevant prior convictions through testimony and judgment entries. Further, he contends certain comments were made evidencing prior bad acts, including the officers' prior interactions with Zachery, the 911 operator's familiarity with his address, and that Oller had been to a battered women's shelter.

{¶27} Generally, "[a] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Hoerig*, 11th Dist. Trumbull No. 2019-T-0012, 2020-Ohio-1333, ¶ 59, citing *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). However, failure to object to the admission of prior bad acts results in the application of a plain error standard of review. *State v. Boles*, 11th Dist. Ashtabula No. 2013-A-0026, 2014-Ohio-744, ¶ 30. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001). Notice of plain error "is to be taken

8

with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶28} As an initial matter, since it is addressed by the State here, we note that if an offender has "pleaded guilty to or been convicted of two or more offenses of domestic violence," a subsequent domestic violence offense under R.C. 2919.25(A) is elevated to a third-degree felony. R.C. 2919.25(D)(4). Prior convictions that affect the degree of the offense are an essential element of the crime that must be proven by the State beyond a reasonable doubt. *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 8. "[A] certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B)(1). Since there was no stipulation as to the domestic violence offenses, Zachery does not dispute that they were admissible (although we will address whether counsel should have stipulated in the fourth assignment of error). Instead, Zachery takes issue with the fact that evidence was submitted of other charges and convictions that were irrelevant, inadmissible, and more prejudicial than probative under Evid.R. 401-404.

{¶29} Relevant evidence, which is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is admissible except as otherwise provided by rule or law. Evid.R. 401 and 402. Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

9

Case No. 2019-T-0082

Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶30} "The Supreme Court of Ohio has held that evidence of other acts is to be construed against admissibility." *State v. Klaue*, 11th Dist. Ashtabula No. 2007-A-0046, 2007-Ohio-6933, ¶ 50, citing *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). "This is because '[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime.'" *Id.* at ¶ 50*,* quoting *State v. Hector*, 19 Ohio St.2d 167, 174-175, 249 N.E.2d 912 (1969).

{¶31} "In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis: (1) consider whether the evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) whether evidence of the crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose such as those stated in Evid.R. 404(B); and (3) consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice (Evid.R. 403)." *State v. Stuart*, 11th Dist. Lake No. 2018-L-145, 2020-Ohio-3239, ¶ 58.

{¶32} As an initial matter, we consider whether proper notice was given to introduce other acts evidence, in particular the records of Zachery's prior Domestic

10

Violence convictions. Pursuant to Evid.R. 404(B), "the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The State was obligated to comply with the requirement to give "reasonable notice before trial." *State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, ¶ 57. Here, the record demonstrates that sufficient notice was given through the State's August 27, 2019 "Answer to Request for Discovery," wherein the State advised that Zachery had prior domestic violence convictions, which convictions were "elemental," and indicated that the State "will introduce certified copies of the judgment entry of conviction or a certified copy of the docket." While this meets the minimum standard for notice as it refers only to the "previously provided criminal history of the Defendant," evidence of which is not present in the record on appeal, it did place Zachery on notice that evidence of his prior criminal history would be introduced. Further, Zachery's counsel took no issue with the notice provided, objecting only to whether the convictions introduced properly identified his client as the offender.

{¶33} Here, evidence and testimony regarding multiple convictions and/or charges were admitted in addition to the domestic violence convictions. Charges for Violating a Protection Order and Resisting Arrest, and a conviction for Child Endangering from 2000 and 2001 were either admitted through judgment entries introduced as evidence and/or testimony of Fenstermaker. We note that although the judgment entries show the Resisting Arrest and Violating a Protection Order charges were dismissed, Fenstermaker's testimony indicated that Zachery was convicted of these offenses. These constitute other acts that show past criminal behavior and are the type of evidence

11

prohibited under Evid.R 404(D). There is no reason to find that they were relevant to proving the State's case or served a purpose contained in Evid.R. 404(B). Further, the judgment entry for the 2000 Domestic Violence case also contained notations about Zachery violating his probation, another prior bad act having no relevance to the present case. Collectively, the evidence of several prior convictions and accompanying testimony served to portray Zachery as an individual who frequently committed crimes, which Evid.R. 404 seeks to protect against. Although a limiting instruction was given that the Domestic Violence convictions should not be considered for purposes other than enhancement, the other charges and convictions were not discussed in this instruction. We find this evidence to be inadmissible other acts evidence.

{¶34} The State argues that these convictions were simply presented as part of the records from the domestic violence cases and that there is "no authority requiring redaction where there are multiple convictions in a single judgment entry." We find this argument wholly unconvincing and must strongly reject it. First, it has been held that where multiple convictions are contained in an entry where an enhancement conviction is present, it is improper to admit the remaining convictions. *State v. R.R.A.*, 2019-Ohio-5090, 150 N.E.3d 485, ¶ 11 and 24 (7th Dist.) ("all information regarding Appellant's criminal convictions on charges other than those for violating a protection order were improperly admitted"). There is simply no reason why unrelated convictions should be introduced merely because they are contained on the same document as a relevant and admissible crime. Additionally, in the case of all three of the misdemeanor charges/convictions discussed above (with the exception of the probation violation), the information regarding the charge and/or conviction was contained on a separate piece of

12

paper/judgment entry than the Domestic Violence conviction. These additional charges need not have been presented to demonstrate the Domestic Violence convictions. It was improper for the prosecutor to submit, and the court to accept, such records when the inadmissible offenses could have easily been removed or redacted and we admonish the State to avoid such conduct in future cases.

{¶35} Nonetheless, the erroneous admission of evidence of prior bad acts under Evid.R. 404(B) does not require reversal for a new trial where such error is harmless. In such instances, the appellate court "must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, syllabus. "[T]he real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error." *Id.* at ¶ 25. It has been held that improper admission of evidence is harmless "if 'the remaining evidence alone comprises "overwhelming" proof of defendant's guilt.'" (Citation omitted.) *State v. Barker*, 11th Dist. Portage No. 2013-P-0084, 2014-Ohio-4131, ¶ 94, citing *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983).

{¶36} Here, the convictions or charges introduced for Child Endangering, Violating a Protection Order, and a probation violation were not directly related to the conduct for which Zachery was convicted, nor was there evidence that they were violent offenses, such that the jury would presume these were similar offenses that resulted in him acting in conformity with his prior conduct. *See State v. Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 61 (finding no prejudice from admitting evidence of a prior

13

bad act when, inter alia, it "was nothing like the offense for which the jury entered guilty verdicts"). We also note that the fact that Zachery had a prior criminal record was known to the jury by valid means, both through the proper admission of records of his past domestic violence offenses and his own admission in his testimony that he had committed several such offenses in the past. These other convictions did not have a strong impact when viewed in light of these circumstances.

{¶37} Further, we find that the strength of the remaining evidence as to the offenses of Domestic Violence and Felonious Assault negated the risk of prejudice and resulted in harmless error. Oller testified that she was hit, dragged, had a knife held to her neck, and suffered various injuries. Two police officers and the shelter employee observed serious bruising on her face, neck, and breast, consistent with the incident that she described. A broken door was observed consistent with her story that Zachery broke down the door to continue his assault. Following the occurrence of the attack, she sent a text message to a friend showing her fear of Zachery which led to the police response to the home, where Zachery lied about Oller being present and Oller was seen peeking out of the house at the officers. All of these details provided strong evidence in support of a conviction. Zachery's self-serving testimony that Oller ran into a door, a chair fell on Oller while she was on a bed, and that he hit her in the breast while catching her from falling, an explanation inconsistent with his initial statement to police that Oller was not present in his home at all, neither negates the strength of the foregoing evidence, nor is it corroborated by any other evidence in the record.

{¶38} As to the admission of the prior Resisting Arrest offense, as well as testimony from Fenstermaker that Zachery had resisted arrest during a previous

14

interaction, we emphasize that the trial court did sustain an objection to Fenstermaker's testimony. We recognize that evidence of Resisting Arrest goes directly to an offense for which Zachery was convicted here, increasing the risk that it could influence the jury's decision that he resisted arrest on this occasion. However, the evidence supporting the Resisting Arrest conviction in this instance was overwhelming given that the dash camera video and audio of the entire interaction between the officers and Zachery was played for the jury. It clearly showed them telling Zachery he was being detained and him pulling away and struggling with the officers. A prior charge for resisting arrest or references to this offense would not influence the jury's determination when the video showed them the exact events that occurred here. Further, Zachery admitted to committing the offense in a conversation recorded while he was in jail. The strength of the evidence was more than sufficient for a conviction when removing the improper reference to the prior bad act of being charged for Resisting Arrest.

{¶39} As to the remaining alleged "bad acts" evidence, we find no reversible error. Zachery takes issue with various references made in Fenstermaker's testimony that he had familiarity with Zachery and that there had been prior disturbances at his home. Fenstermaker's testimony that he had responded to domestic violence calls at Zachery's home was duplicative of the properly admitted judgment showing that a domestic violence arrest occurred while Zachery was residing at the home. Nonetheless, even presuming these facts were improperly admitted evidence of prior bad acts, there was overwhelming evidence to support Zachery's convictions as outlined above. Finally, while Zachery contends the testimony that Oller had been to a domestic violence shelter six times over the past few years should have been inadmissible, it did not reference him or acts he

15

committed such that we can find it was evidence of a prior bad act.

{¶40} The first assignment of error is without merit.

{¶41} In his second assignment of error, Zachery argues that the prosecutor improperly appealed to the jury's emotions through various statements and questions made in voir dire and closing argument, asking jurors to imagine the circumstances of this case occurring to them, violating the "golden rule."

{¶42} The scope of voir dire is generally evaluated under an abuse of discretion standard, but where there is a failure to object, the plain error standard is applied. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 28; *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 73.

{¶43} In relation to closing arguments, "[c]onsiderable latitude is permitted." (Citation omitted.) *State v. Mauer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768 (1984). "The prosecution, however, must avoid insinuations and assertions which are calculated to mislead the jury" and "may not express a personal belief or opinion on the credibility of a witness or the guilt of the accused." *State v. Grable*, 11th Dist. Ashtabula No. 2019-A-0042, 2019-Ohio-4516, ¶ 16. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Id.*, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

{¶44} Courts in this state have found that a "'Golden Rule' argument exists when counsel appeals to the members of the jury to abandon their position of impartiality by placing themselves in the place of one of the parties." *Sinea v. Denman Tire Corp.*, 135 Ohio App.3d 44, 63, 732 N.E.2d 1033 (11th Dist.1999); *State v. Tucker,* 12th Dist. Butler

16

No. CA2010-10-263, 2012-Ohio-139, ¶ 44.  It has been held that while a "golden rule" argument is "improper," such comment "during closing argument is not *per se* prejudicial so as to warrant a new trial," but, instead, the test is one of prejudice.  *State v. Southall*, 5th Dist. Stark No. 2008 CA 00105, 2009-Ohio-768, ¶ 115; *Sinea* at 63.

{¶45}  In closing argument, the prosecutor stated: "I want you to imagine, again, having this man hold a knife to your throat after he's assaulted you, after he's threatened you, after he's screaming at you, holding it to her throat."  This statement put the jurors in the place of Oller, asking them to imagine themselves in her circumstances.  This statement, however, did not result in prejudice warranting a new trial.  When viewed in the context of the entire closing argument, we do not find this alone improperly influenced the jury's decision or led to its finding of guilt, particularly in light of the detailed evidence presented by Oller of the acts committed by Zachery and the specific testimony about the harm that she suffered.  *See State v. Broyles*, 11th Dist. Ashtabula No. 93-A-1818, 1994 WL 721784, *4-5 (Dec. 9, 1994).

{¶46}  Although not a "golden rule" violation, the prosecutor also stated during closing argument that holding a knife to someone's throat is "felonious assault, period," which Zachery contends was an impermissible statement commenting on his guilt.  "[A]n attorney should avoid expressing personal beliefs or opinions with respect to the guilt of the accused * * *."  *State v. Kish,* 11th Dist. Lake No. 2001-L-014, 2002-Ohio-7130, ¶ 51.  Even presuming the foregoing was an impermissible statement commenting on Zachery's guilt, the trial court sustained the objection and told the jury to disregard the statement.  The court instructed the jury: "it's up to you to determine whether or not the defendant is going to be guilty or not guilty of these charges."  Given the presumption that the jury

17

followed this instruction, *State v. Motley*, 11th Dist. Portage No. 2017-P-0023, 2018-Ohio-3324, ¶ 26, and that we do not find this to be a "golden rule" violation, we find no error.

{¶47} Finally, regarding statements made during voir dire which Zachery argues led to an overall tone of unfairness and bias in the proceedings, the prosecutor asked the potential jurors questions such as "Let's say one time your husband puts his hands on you, maybe in a bad way * * * Would you leave him?," would a victim assume the risk if she chose to stay with an abusive individual, and whether, if a husband argued with a wife and she kept following him and would not let him walk away, "Then it's okay to bust her in the gums one time, I'm sure; right?" In context, it appears these questions were an attempt to discern whether jurors would believe violence is permissible when there is an argument and whether they would blame a victim for failing to leave a bad relationship. They did not reference the specific victim or the defendant or ask the jurors to place themselves in the shoes of one of the parties in particular. We do not find that these were improper or warrant reversal.

{¶48} The second assignment of error is without merit.

{¶49} In his third assignment of error, Zachery argues that the State's line of questioning on cross-examination regarding whether he disputed his Domestic Violence convictions was improper as the convictions should have only been permitted to enhance the offense and no discussion about the details of these convictions was permitted. We note that while defense counsel objected to certain follow-up questions, counsel did not object to the general questions regarding whether Zachery disputed the convictions so on that general point, a plain error standard applies.

{¶50} On direct examination, Zachery was questioned by defense counsel about

18

the prior Domestic Violence convictions and briefly explained that he had committed some offenses when he was using drugs, although he did not specify the number of offenses committed. In cross-examination, the State asked: "Do you dispute in Warren Municipal Court, Case number 2000-CRB-2306, that you, Anthony Zachery, were convicted of domestic violence against Terra McCloskey. Do you dispute that?" Similar questions were asked as to each of the domestic violence convictions which had been established during Fenstermaker's testimony.

{¶51} It is accurate that it would be improper for the State to introduce evidence regarding the specific details of the prior domestic violence offense since that would "exceed the necessary evidence to prove the existence of the prior conviction and transform the matter into an Evid.R. 404(B) situation." *State v. Feathers*, 11th Dist. Portage No. 2005-P-0039, 2007-Ohio-3024, ¶ 77. However, the State did not ask questions about the details of the convictions other than to confirm that Zachery was convicted of the offenses and when Zachery started to give testimony stating details about the convictions, the prosecutor stated "I'm not asking you what happened. I'm asking you, do you dispute [the convictions]?" Given defense counsel's argument that the State had failed to prove Zachery was the one who committed the offenses, and that the only details provided regarding the prior offenses was Zachery's own testimony which went beyond the questioning asked by the prosecutor, we do not find this to be error. *See State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 62 (where the defendant did not stipulate to a prior domestic violence conviction and questioned whether recitation of such prior offense was correct, when the State inquired further to confirm the conviction, this line of questioning was not error).

19

{¶52} The third assignment of error is without merit.

{¶53} In his fourth assignment of error, Zachery argues that trial counsel was ineffective by failing to offer a stipulation regarding the prior domestic violence convictions rather than allowing the State to submit evidence of seven such convictions.

{¶54} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When evaluating the conduct of trial counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation omitted.) *State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81.

{¶55} Here, there is nothing in the record to indicate that defense counsel requested or sought to stipulate to the offenses of domestic violence. As noted above, the State was required to prove two prior domestic violence convictions were committed in order to enhance the level of the domestic violence offense to a third-degree felony. R.C. 2919.25(D)(4). "[A]n offender may, and often does, stipulate to a prior conviction to avoid the evidence being presented before a jury," including in cases involving a domestic violence enhancement. *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 14; *State v. Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142, ¶ 101. Zachery emphasizes the propositions set forth in *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, and *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct.

20

644, 136 L.Ed.2d 574 (1997), regarding the impact of stipulations in cases involving a prior conviction as an element of the offense. The Ohio Supreme Court held in *Creech* that, if a defendant does agree to stipulate to a prior conviction, it is an abuse of discretion for the court to fail to accept such stipulation and instead admit the full record of the prior indictment when the evidence is being admitted only to prove the element of a prior conviction. *Id.* at ¶ 40. The court recognized that offering evidence of the name and nature of prior convictions, particularly in cases where the present offense could be enhanced by a variety of prior crimes as in the offense of having weapons while under disability, can create an unfair risk of prejudice. *Id.* at ¶ 39. We do emphasize that in the case of a domestic violence offense, in contrast to having weapons while under disability, the crime providing the basis for enhancement will be domestic violence rather than one of several different offenses so the "name" of the conviction is not of particular significance.

{¶56} Nonetheless, we are faced only with the question of whether failure to stipulate to prior domestic violence convictions constituted ineffective assistance of counsel.

{¶57} Courts which have addressed this issue have found there may be legitimate reasons for advising a defendant not to stipulate, such as to raise the argument that there was an error with the prior domestic violence convictions. *State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 25; *State v. Lester*, 3d Dist. Union Nos. 14-18-21 and 14-18-22, 2020-Ohio-2988, ¶ 65 ("[i]t is a well-established principle that decisions regarding * * * stipulations are matters of trial strategy and tactics") (citations omitted). In the present matter, as the State points out, although limited questions were

21

asked of Fenstermaker on this issue, defense counsel specifically argued in relation to the admission of exhibits that the State did not prove the convictions were for this Anthony Zachery and that the officer did not give specific information about Zachery's identifying information. "A reviewing court must not second-guess trial strategy decisions." (Citation omitted.) *State v. Tipton*, 11th Dist. Portage No. 2012-P-0072, 2013-Ohio-3207, ¶ 31.

{¶58} We also recognize that it has been held that failure to stipulate to prior domestic violence convictions does not establish prejudice since, if the defendant had stipulated, the jury still would have learned about the fact that he had prior domestic-violence convictions. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 153; *State v. Wood*, 2d Dist. Clark No. 2016-CA-69, 2018-Ohio-875, ¶ 51-52 (noting that the jury would have "nonetheless * * * learned of the prior convictions" regardless of the stipulation and emphasizing that the failure to stipulate "did not lead to prolonged testimony about [the defendant's] record"). Furthermore, a limiting instruction was given that prohibited the jury from considering the conviction for any purpose other than enhancement, which we must presume the jury followed. *Motley*, 2018-Ohio-3324, at ¶ 26.

{¶59} The fourth assignment of error is without merit.

{¶60} In his fifth assignment of error, Zachery argues that defense counsel was ineffective for the failures outlined above, including not addressing the "golden rule violations," stipulating to prior convictions, and failing to object to the repeated introduction of other acts evidence. He argues that if the foregoing evidence had not been permitted, the outcome of the trial would have been different.

{¶61} As explained above, while we find error resulting from the failure to object

22

to the introduction of certain other acts evidence, such error was harmless. Thus, no prejudice resulted and reversal for ineffective assistance would be improper. To the extent that the prosecutor's remarks during closing argument were inappropriate, the same analysis applies. As for the stipulation, this was fully addressed above.

{¶62} We also note that Zachery mentions in his brief's factual summary, although not fully developing this issue in this assignment of error, that defense counsel did not object to the fact that the trial judge gave a *Howard* charge to a deadlocked jury and instructed them to continue deliberating. "[T]he *Howard* charge is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." *State v. Robb,* 88 Ohio St.3d 59, 81, 723 N.E.2d 1019 (2000). Whether the jury is irreconcilably deadlocked, and, thus, a determination cannot be reached by the jury, is a discretionary decision for the trial court judge and is based on the circumstances of the case. *State v. Edwards*, 11th Dist. Trumbull No. 2006-T-0038, 2006-Ohio-6349, ¶ 34-35. Here, the jury returned after approximately two hours of deliberation to say it could not reach a verdict. "A trial court's delivery of the *Howard* charge after only a few hours of deliberation has been upheld in numerous cases." *State v. Shepard,* 10th Dist. Franklin No. 07AP-223, 2007-Ohio-5405, ¶ 11. Where a *Howard* instruction is properly given, "counsel cannot be deficient for failing to object." *State v. Spradlin*, 12th Dist. Clermont No. CA2016-05-026, 2017-Ohio-630, ¶ 91.

{¶63} As Zachery has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and that this resulted in prejudice, we find this argument lacks merit.

{¶64} The fifth assignment of error is without merit.

23

{¶65} In his sixth assignment of error, Zachery challenges the manifest weight and the sufficiency of the evidence of the convictions for Resisting Arrest and Felonious Assault.

{¶66} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶67} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶68} As to Resisting Arrest, the State was required to prove that Zachery

24

"recklessly or by force, * * * resist[ed] or interfere[d] with a lawful arrest of the person or another." R.C. 2921.33(A).

{¶69} Zachery argues that he could not be convicted of Resisting Arrest because he was not under arrest at the time he struggled with the officers but was only being detained, noting they had not yet spoken with Oller when he was handcuffed. He further argues there was only a "slight struggle."

{¶70} This court has explained that an element of resisting arrest is a lawful arrest but that "[t]he arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense." *State v. Wooden*, 11th Dist. Portage No. 2003-P-0035, 2004-Ohio-5514, ¶ 32. "Probable cause for an arrest exists if reasonable, trustworthy facts and circumstances within the arresting officer's knowledge would warrant a person to believe that the suspect had committed or was committing an offense. * * * While probable cause means more than bare suspicion, it means less than evidence which would be required to justify a conviction." *Id.* at ¶ 33. "In determining the lawfulness of an arrest, a court need not find that the elements of the underlying charge have been proven, but there must exist a 'reasonable basis' for the arrest." *State v. Thompson*, 116 Ohio App.3d 740, 743, 689 N.E.2d 86 (1st Dist. 1996).

{¶71} Here, we find there was probable cause to conduct an arrest at the time the officers informed Zachery they were detaining him and asked him to comply with requests to handcuff him. The officers had been informed by dispatch that a 911 call had been received reporting a woman had locked herself in the bathroom and had asked her friend for help because her boyfriend was beating her. Upon responding to the location which

25

the officers knew to be correct from the description, Zachery lied in saying his girlfriend was not there. Fenstermaker observed Oller peeking out as though she was hiding and waiving in a motion that he believed indicated she needed assistance. While we recognize that this would not have provided sufficient evidence for a conviction for domestic violence or related offenses, there was a reasonable basis to believe such crime had been committed.

{¶72} As to Zachery's argument that there was only a "slight struggle," the testimony and video showed that he repeatedly pulled away from police, would not be placed under their control, which ultimately caused them to run into the door, and would not cooperate with commands to place his hands behind his back. He cooperated only after threats that a taser would be used. We find this meets the elements of resisting arrest. *See State v. Cookingham*, 11th Dist. Ashtabula No. 2017-A-0023, 2017-Ohio-8362, ¶ 23 (resisting arrest was supported by evidence where the defendant "could not be controlled, flailed, and spun away from the officers" trying to conduct an arrest).

{¶73} To convict Zachery of Felonious Assault, it was necessary to prove that he knowingly attempted to cause physical harm to another by means of a deadly weapon or a dangerous ordnance. R.C. 2903.11(A)(2).

{¶74} Zachery argues that the evidence did not support a finding he used a deadly weapon to cause or attempt to cause harm because the alleged weapon, a knife, was not recovered, the police report had marked "no injuries" and Oller described the use of the knife as a "scare tactic." We find this conviction was supported by the evidence.

{¶75} There is no requirement to submit the weapon itself as evidence to prove the use of such weapon. Oller's testimony that a knife was used is sufficient to establish

the use of such a weapon. In addition to Oller's testimony, Fenstermaker testified that he saw a cut on her neck that could be from a knife or something used to choke her. While Fenstermaker did confirm that the domestic violence checklist he completed had a marking that there were "no injuries," he explained it was possible he checked the wrong box. Nonetheless, there was clear testimony of injuries as well as an attempt of harm with a deadly weapon, which meets the requirements of R.C 2903.11(A)(2).

{¶76} Finally, Zachery argues that there was not an attempt to cause harm with the knife because Oller testified he did not "push" the knife against her throat and that she believed it was a "scare tactic." However, she further explained that she did not know if he was going to slit her throat and she was "hoping he wasn't going to follow through." The fact that Zachery held a knife against her throat, possibly leading to the cut, scaring her enough to flee to the bathroom, combined with other evidence such as text messages showing she had been in fear for her life and Fenstermaker's testimony that she had stated Zachery threatened to kill her with the knife, supports a determination of an attempt to cause harm.

{¶77} The sixth assignment of error is without merit.

{¶78} In his seventh assignment of error, Zachery argues that the trial court erred by allowing an officer to state that Zachery did resist arrest, and the prosecutor to state that placing a knife to someone's neck is "felonious assault. Period." He contends that these are improper opinions and statements on ultimate issues.

{¶79} As to Officer Wilson's opinion that Zachery did resist arrest, he was asked, with no objection from defense counsel: "Based on your training, education, and experience, did Mr. Zachery resist arrest on that night?" to which he responded

27

Case No. 2019-T-0082

affirmatively. Concern has been expressed that when an officer opines on a defendant's guilt, it can infringe on the province of the trier of fact. *State v. Haney*, 7th Dist. Mahoning No. 05 MA 151, 2006-Ohio-4687, ¶ 41. However, even assuming, arguendo, that this statement was impermissible, as discussed extensively above, the entirety of the conduct constituting the resisting arrest offense was shown to the jury through dash camera video that had clear audio and sound recording of the incident. It showed the exact conduct constituting the offense. As such, there was substantial evidence of guilt and this would be harmless error. *State v. Trefney*, 11th Dist. Portage No. 2011-P-0032, 2012-Ohio-869, ¶ 46-47.

{¶80} Regarding the prosecutor's statement about the Felonious Assault, we find no error for the reasons discussed in the second assignment of error.

{¶81} The seventh assignment of error is without merit.

{¶82} In his eighth assignment of error, Zachery argues that even if all of the foregoing were not sufficient on their own to constitute reversible error, when considered together, they result in a deprivation of a fair trial.

{¶83} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 257. "[M]ultiple errors that are separately harmless may, when considered together, violate a person's right to a fair trial in the appropriate situation." *State v. Goff*, 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998).

{¶84} Zachery restates his arguments raised in the prior assignments of error. To

28

the extent that some of these were found not to be in error, they play no part in a cumulative error analysis. When weighing the remaining issues, involving the golden rule issue and the other acts evidence, we do not find that they resulted in denial of a fair trial. When considering these issues in light of the substantial evidence presented at trial and in context, we do not find they impacted the outcome of the trial thereby resulting in an unfair trial.

{¶85} The eighth assignment of error is without merit.

{¶86} For the foregoing reasons, Zachery's convictions for Felonious Assault, Domestic Violence, and Resisting Arrest in the Trumbull County Court of Common Pleas, are affirmed. Costs to be taxed against appellant.

MARY JANE TRAPP, P.J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

Case No. 2019-T-0082