[Cite as *State v. Barefield*, 2025-Ohio-433.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-A-0047 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the County Court, Eastern District |
| ZAIRON A. BAREFIELD, | Trial Court No. 2023 CRB 00129 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: February 10, 2025
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Mary M. Stanford*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, LLC, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Zairon A. Barefield, appeals from the judgment of the Ashtabula County Court, Eastern District, sentencing him to an aggregate jail term of 180 days after a jury found him guilty of two counts of domestic violence.

{¶2} Appellant raises six assignments of error, contending (1) plain error occurred when the State introduced testimony about the victim obtaining a protection order against him; (2) the State's misconduct at trial deprived him of a fair trial and constitutes plain error; (3) the trial court committed plain error in admitting opinion testimony from a lay witness; (4) he received ineffective assistance of trial counsel; (5)

admission of improper other-acts evidence prejudiced him; and (6) cumulative error deprived him of a fair trial.

{¶3} Having reviewed the record and the applicable law, we find Appellant's assignments of error to be without merit for the following reasons:

{¶4} (1) Appellant has shown an obvious error regarding the admission of the victim's testimony about obtaining a protection order against him. In light of the evidence corroborating the victim's version of events, however, Appellant has not shown resulting prejudice.

{¶5} (2) Appellant has not established prosecutor misconduct because he has not shown that the prosecutor's statements during closing argument were obviously improper.

{¶6} (3) The sheriff deputy's testimony about Appellant being the primary aggressor was admissible as lay opinion testimony under Evid.R. 701. The deputy's opinion helped explain why Appellant was charged with domestic violence and was based on the deputy's own perception in investigating the incident. In addition, being the primary aggressor is not an element of domestic violence. Therefore, the deputy did not opine on the ultimate issue in the case, nor would that, by itself, require exclusion.

{¶7} (4) Since Appellant has not established plain error in his first through third assignments of error, he cannot establish ineffective assistance of trial counsel on the same grounds.

{¶8} (5) There was no obvious error in the admission of other-acts evidence because the trial court sustained Appellant's objections. In addition, since the trial court

2

did not admit the alleged other-acts evidence, a limiting instruction would have served no legitimate purpose.

{¶9} (6) Since we have not found multiple errors, the cumulative error doctrine does not apply.

{¶10} Therefore, we affirm the judgment of the Ashtabula County Court, Eastern District.

## Substantive and Procedural History

{¶11} On March 14, 2023, Appellant and his then-spouse, E.B., lived together in the garage of his father's house in Pierpont, Ohio. On that date, the couple began arguing about E.B. moving her car, which was blocking in Appellant's parents. According to E.B., she requested Appellant's assistance in removing snow from the car, but he refused. E.B. proceeded to lock Appellant out of the garage's main entrance. Appellant went around the side to a plywood door and said he was "going to f--- [her] up." E.B. began recording with her cell phone. The recording begins with E.B. saying, "I am at home, and now my husband is about to come through the f---ing plywood door. He's going to attack me. He's going to f--- me up. He's going to –." At that point, the plywood door opened, and E.B.'s phone fell to the ground, capturing only the audio. According to E.B., Appellant kicked in the plywood door, entered the garage, and began screaming at her. Appellant then tackled her onto the bed and punched her several times in the back of her head. During the physical assault, E.B. attempted to "taser" Appellant but was unsuccessful. Finally, Appellant threw a carboard box containing a lounge chair at E.B.

{¶12} Deputy Helfer of the Ashtabula County Sheriff's Department arrived at the scene in response to a call about an assault/possible domestic violence. Appellant had

3

apparently left the residence prior to the deputy's arrival. Deputy Helfer spoke with E.B., which he recorded with his body camera, and took photos of the scene. Despite Appellant's absence, Deputy Helfer determined that he was the primary aggressor.

{¶13} On April 25, 2023, a complaint was filed in the Ashtabula County Court, Eastern District, charging Appellant with (1) domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and (2) domestic violence, a fourth-degree misdemeanor in violation of R.C. 2919.25(C). Appellant pleaded not guilty.

{¶14} On April 23, 2024, the case was tried to a jury. The State presented testimony from E.B. and Deputy Helfer. The State also submitted Deputy's Helfer's photos, his body camera recording, and E.B.'s cell phone recording. Appellant did not present testimony or exhibits. The jury found Appellant guilty of both offenses. The trial court ordered a presentence investigation and set the matter for sentencing.

{¶15} On May 20, 2024, the trial court held a sentencing hearing. The trial court sentenced Appellant to 180 days in jail on count one and 30 days in jail on count two, to be served concurrently, with 28 days of jail-time credit.

{¶16} Appellant timely appealed. This Court granted Appellant's motion to stay his sentence pending appeal. Appellant now raises six assignments of error.

**Protection Order**

{¶17} Appellant's first assignment of error states: "Plain error occurred when the State introduced testimony about the victim obtaining a protection order against Appellant."

{¶18} Appellant challenges E.B.'s following testimony during her direct examination:

4

Q. All right. And did you indicate a moment ago that you had pursued a restraining order?

A. Yes.

Q. Was that granted?

A. Yes. For five years.

Q. Okay. So, another court has already made a determination that for five years you need protection from this particular Defendant?

A. Yes.

Q. What court did you get that protection order for?

A. Cleveland, Ohio.

{¶19} Because Appellant did not object to this testimony at trial, he has forfeited all but plain error. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "[T]he accused bears the burden of proof to demonstrate plain error on the record, . . . and must show 'an error, *i.e.*, a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶20} "[E]ven if the error is obvious, it must have affected substantial rights." *Id.* The Supreme Court of Ohio has "interpreted this aspect of the rule to mean that 'the trial court's error must have affected the outcome of the trial.'" *Id.*, quoting *Barnes* at 27. "The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis in original.) *Id.*

5

Case No. 2024-A-0047

**{¶21}** Further, "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Id.* at ¶ 23. The Supreme Court of Ohio has "'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice."'" (Emphasis in original.) *Id.*, quoting *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶22}** The first issue is whether Appellant has shown an error, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings. *See Rogers*, 2015-Ohio-2459, at ¶ 22. Appellant argues that the protection order was "based on the same conduct alleged in the criminal complaint." Therefore, E.B.'s testimony was irrelevant under Evid.R. 401, and any probative value was outweighed by the danger of unfair prejudice under Evid.R. 403.

**{¶23}** "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." Evid.R. 402. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

6

Case No. 2024-A-0047

**{¶24}** Appellant cites *State v. Settles*, 1999-Ohio-774 (3d Dist.), a case in which the jury found the defendant guilty of attempted murder, abduction, and domestic violence. *Id.* at ¶ 1. The State submitted evidence that the victim had obtained a civil protection order against the defendant based upon his criminal charges. *Id.* at ¶ 20. The appellate court found that "[t]he fact that a protection order is granted does not make [the defendant's] guilt any more or less likely, however it does imply that another court has already found [the defendant] guilty. Thus, the effect of the admittance of the order is irrelevant and the effect is overly prejudicial." *Id.*

**{¶25}** The State counters that Appellant's argument is factually incorrect. According to the State, E.B. testified that she obtained the protection order in Cleveland, but the parties resided in Pierpont at the time of the incident. Therefore, E.B. must have been referring to Appellant's prior conduct.

**{¶26}** The State does not explain how this would render E.B.'s testimony relevant and/or nonprejudicial. Evidence of a defendant's prior conduct is generally inadmissible unless the proponent satisfies the requirements of Evid.R. 404(B). That rule includes the relevance and prejudice requirements of Evid.R. 401 and 403. *See State v. Graham*, 2020-Ohio-6700, ¶ 72. In any event, another portion of E.B.'s testimony demonstrates that the protection order involved Appellant's conduct in the underlying case:

> Q. Okay. Very good. Now, after this altercation, where did you go after that?
>
> A. Um, I was forced -- well, not forced, but I was suggested [sic] that I pack up whatever I could and leave. Um, I had to leave, and I left my animals behind. Um, I had to stay in a hotel. Um, *I had to get a restraining order later on.* Um --

(Emphasis added.)

7

**{¶27}** Alternatively, the State argues that E.B.'s testimony was relevant as the "res jesti [sic]" of the case. Presumably, the State is referring to "res gestae," which this Court has defined as "the facts which form the environment of a litigated case." *State v. Karp*, 1981 WL 3752, *3 (11th Dist. Aug. 3, 1981). Res gestae may be implicated when a court is determining the admissibility of other-acts evidence under Evid.R. 404(B). *See, e.g., State v. Hill*, 2019-Ohio-3432, ¶ 50 (5th Dist.). For example, the Supreme Court of Ohio has held that the exclusion of other-acts evidence is not required when "the 'other acts' form part of the immediate background of the . . . crime charged in the indictment." *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). "In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible . . . the 'other acts' testimony must concern events which are *inextricably related* to the alleged criminal act." (Emphasis added.) *Id*.

**{¶28}** The State does not argue that E.B. obtaining a protection order was "inextricably related" to Appellant's criminal offenses. Rather, the State argues that res gestae encompasses information that (1) "refers to the events and circumstances following the crime"; (2) "shows the logical progression of the case during the legal process"; and (3) "eliminates [Appellant's] ability to raise doubt as to why the State did not do certain things or perform certain acts." The State cites no authority in support of this broad definition, and it is inconsistent with the foregoing authority.

**{¶29}** Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." He was also convicted of domestic violence in violation of R.C. 2919.25(C), which provides, "No person, by threat of force,

8

shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Therefore, the State was required to prove that Appellant, at the time of the incident, (1) caused or attempted to cause physical harm to E.B. and/or (2) threatened to cause imminent physical harm to E.B. Evidence that E.B. later obtained a protection order does not make it more likely that Appellant engaged in those acts. Therefore, E.B.'s testimony was not relevant and, thus, was inadmissible. *See* Evid.R. 401 and 402.

{¶30} Even if E.B.'s testimony was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403(A). The State expressly invited the jury to make the prejudicial inference discussed in *Settles*, 1999-Ohio-774 (3d Dist.). Specifically, the prosecutor asked E.B., "So, another court *has already made a determination* that for five years you need protection from this particular Defendant?" (Emphasis added.) The prosecutor emphasized this point twice during closing argument. Therefore, Appellant has shown an obvious error.

{¶31} The next issue is whether Appellant has shown a reasonable probability that the error resulted in prejudice, i.e., that E.B.'s testimony about the protection order affected the outcome of Appellant's trial. *See Rogers*, 2015-Ohio-2459, at ¶ 22. Appellant cites *Settles*, where the appellate court found prejudice because the defendant and the victim "were the only two persons present at the time the crime occurred" and "the case hinged upon a question of credibility to be decided by the jury." *Id.* at ¶ 22.

{¶32} In this case, as in *Settles*, Appellant and E.B. were the only people present at the time of the incident. Unlike in *Settles*, however, the State's case did not hinge entirely on E.B.'s credibility. Rather, other trial evidence corroborated her version of

9

events. For instance, the State introduced Deputy Helfer's body camera footage recorded shortly after the incident wherein E.B. told him a version of events similar to her trial testimony. The State also introduced a photo from the scene that depicted a large piece of plywood separated from an open doorway. The State further introduced E.B.'s cell phone recording. While most of the recording lacks video, the audio is quite disturbing. It depicts Appellant angrily screaming, "Move your car!" and "Move it!" and E.B. angrily screaming back. It further depicts sounds consistent with a person's body being struck, a taser being deployed, and objects being thrown about.

**{¶33}** In light of the evidence corroborating E.B.'s version of events, we cannot say there is a reasonable probability that E.B.'s improper testimony affected the outcome of Appellant's trial. Accordingly, Appellant has not established plain error.

**{¶34}** Appellant's first assignment of error is without merit.

### Prosecutor Misconduct

**{¶35}** Appellant's second assignment of error states: "The State's misconduct at trial deprived Appellant of a fair trial and constitutes plain error."

**{¶36}** Appellant challenges the prosecutor's two statements during closing argument that "We believe victims of domestic violence." In the first instance, the prosecutor stated:

> [E.B.] is a victim of domestic violence, and she deserves to be believed, Ladies and Gentlemen, because that's what we do. *We believe victims of domestic violence.* We know that she was fed up. She testified to it. You could hear it in her voice on the video. He was fed up. She's afraid. She's still afraid. She testified to that.

(Emphasis added.)

Case No. 2024-A-0047

**{¶37}** In the second instance, the prosecutor stated, "The verdict that needs to be returned is one of justice, because *we believe victims of domestic violence*. Ms. Barefield was clearly distraught. You can hear it in her voice. She was fed up." (Emphasis added.)

**{¶38}** Appellant did not object to the prosecutor's statements at trial. Therefore, he has forfeited all but plain error and must establish an obvious error resulting in prejudice. *See Rogers*, 2015-Ohio-2459, at ¶ 22-23.

**{¶39}** Prosecutors and defense counsel are afforded a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Kelly*, 2012-Ohio-523, ¶ 63 (11th Dist.). "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Smith*, 2000-Ohio-450, ¶ 87, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶40}** Appellant argues that the prosecutor's statements were improper personal opinions about E.B.'s credibility. The Supreme Court of Ohio has held that "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness . . . ." *Smith*, 14 Ohio St.3d at 14. For example, in *State v. Thayer*, 124 Ohio St. 1 (1931), the prosecutor stated, "I will also say, and I am saying it from the bottom of my heart, that unless the investigation that I would make before giving my consent to go into a case as

11

special prosecutor, convinced me that I was justified in taking that side of the case, I would never-I would never accept the appointment to prosecute a man that I believed from the investigation was innocent of the charge." *Id.* at 5.

{¶41} Here, the prosecutor's statements did not obviously constitute personal opinions. Unlike in *Thayer*, the prosecutor did not expressly state that E.B. was credible. Rather, the statement, "*We* believe victims of domestic violence," (emphasis added), appears to reference the general notion that victims of domestic violence *should* be believed when they come forward. In addition, the prosecutor tied his statements to the trial evidence by citing E.B.'s testimony and the audio recording.

{¶42} Appellant also argues that the prosecutor's statements were improper appeals to juror sympathy. The Supreme Court of Ohio has stated, "[r]ealism compels us to recognize that criminal trials cannot be squeezed dry of all feeling." *State v. Keenan*, 66 Ohio St.3d 402, 409 (1993). However, a prosecutor may not "consistently substitute[] emotion for reasoned advocacy in his closing arguments." *Id.* at 407. For example, in *State v. Carter*, 2022-Ohio-3855 (6th Dist.), the Sixth District found the prosecutor's following statement during closing argument in a child rape trial to be improper:

> Now [A.B.] told you that first and foremost she was afraid to come forward because she didn't think anybody would believe her.
>
> So when you go back to the jury room, I want you to consider something. If you come back with not guilty verdicts on these charges, what message will [A.B.] get? That you didn't believe her. And she will remember that message for the rest of her life.
>
> But by the same token, if you come back with the right verdicts, the guilty verdicts, what message is she going to get? That you believed her. And she will remember that, too, for the rest of her life.

*Id.* at ¶ 48.

12

**{¶43}** The appellate court found that "the prosecutor was not simply recounting the testimony of [trial witnesses] that many victims of child sexual abuse fail to report out of fear that no one will believe them" but was instead "suggesting to the jury that if they did not return a guilty verdict, then they would validate the fear that caused her to not come forward in the beginning, and she would carry that rejection with her for the rest of her life." *Id.* at ¶ 50. The court found that "tactic to be inflammatory and wrong, and contrary to the role of a prosecutor." *Id.*

**{¶44}** Here, the prosecutor's statements were not an obvious appeal to juror sympathy. Unlike in *Carter*, the prosecutor did not use inflammatory language, nor did he insinuate that the jury should send a message with its verdict or speculate how E.B. may be affected.

**{¶45}** Since Appellant has not shown that the State's statements were obviously improper, he has not established plain error. Accordingly, Appellant's second assignment of error is without merit.

### Opinion Testimony

**{¶46}** Appellant's third assignment of error states: "The trial court committed plain error in admitting opinion testimony from a lay witness."

**{¶47}** Deputy Helfer testified, in relevant part, as follows:

Q. Okay. Did you have occasion to make contact with [Appellant] on that particular date?

A. No. He had I believe left prior to making contact. I couldn't get in the house. Nobody was answering the door, and [E.B.] did say that a vehicle had left. I can't say if it was him or not, but he was not answering the door.

Q. Okay. But, ultimately, you had otherwise conducted an investigation and made a determination that Mr. Barefield was the primary aggressor in this particular case?

13

Case No. 2024-A-0047

A. Yes.

Q. Okay. That's based on your knowledge and training and experience as a police officer?

A. Yes.

Q. All right. Is it common sometimes that you may not always be able to meet with an individual involved in the incidence [sic] and you have to do further investigation to make contact and so forth?

A. Yeah. We certainly try to do that. If we can make contact, I like to get both sides of the story if I can.

{¶48} Appellant did not object to Deputy Helfer's testimony at trial and, therefore, has forfeited all but plain error. *See Rogers*, 2015-Ohio-2459, at ¶ 22-23.

{¶49} Appellant argues that Deputy Helfer's opinion was inadmissible as expert opinion testimony under Evid.R. 702. The State concedes that it did not attempt to qualify Deputy Helfer as an expert.

{¶50} Appellant next argues that Deputy Helfer's opinion was inadmissible as lay opinion testimony under Evid.R. 701, which states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶51} Appellant argues that Deputy Helfer's opinion was not helpful to a clear understanding of his testimony or the determination of a fact in issue. We disagree.

{¶52} "While lay witnesses may provide the jury with helpful information based on their own personal observations, the jury, not the witness, has the sole privilege of assessing the credibility and veracity of the witnesses and evidence. Therefore, a police officer's opinion regarding the truthfulness of another witness is inadmissible." *State v.*

14

*Batie*, 2015-Ohio-762, ¶ 6 (8th Dist.). "A police officer may, however, testify regarding who is the primary physical aggressor, if that testimony is designed to establish the reasons why a police officer reacted in a particular way towards one party and not the other." *Id.* This Court has explained that "[t]he issue of who the primary aggressor is in an altercation is not an element of domestic violence. Rather, it relates to the proper procedure a police officer should follow when making an arrest in a domestic violence case." *State v. Boldin*, 2008-Ohio-6408, ¶ 78 (11th Dist.). R.C. 2935.03(B)(3)(b) requires police officers to seek an arrest warrant for the party they have reason to believe is the primary physical aggressor. *Id.* at ¶ 78-79. "Therefore, the issue of who is the primary physical aggressor is relevant to the reasons why an officer proceeded on charging the defendant." *Batie* at ¶ 6; *see, e.g., State v. Trefney*, 2012-Ohio-869, ¶ 41-45 (11th Dist.) (deputy's testimony that she had probable cause to prepare the charge for domestic violence and arrest the defendant was permissible under Evid.R. 701).

{¶53} Deputy Helfer's opinion testimony related to his investigation of the incident and the fact that he did not speak with Appellant. Therefore, his opinion was admissible under Evid.R. 701 to explain why Appellant was ultimately charged with domestic violence.

{¶54} Appellant next argues that Deputy Helfer's testimony was not based on his own perception but instead on information that E.B. relayed to him. The Supreme Court of Ohio has held that an officer's opinion testimony may be inadmissible when it is "based partly upon the work of *other investigators*." (Emphasis added.) *State v. Johnson*, 2000-Ohio-276, ¶ 57, citing *State v. Webb*, 70 Ohio St.3d 325, 333 (1994). Here, Deputy Helfer personally conducted the investigation by interviewing E.B., reviewing E.B.'s

15

phone recording, and viewing the scene. Therefore, his opinion was based on his own perception.[1]

{¶55} Finally, Appellant argues that a police officer may not testify on an ultimate issue to be determined by the jury. Appellant quotes the general rule in *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), that "an opinion, whether expert or otherwise, may not be admitted when it, in effect, answers the very question as to the existence or nonexistence of an ultimate fact to be determined by the jury." *Id.* at paragraph one of the syllabus. Appellant fails to acknowledge Evid.R. 704, which states, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable *solely* because it embraces an ultimate issue to be decided by the trier of fact." (Emphasis added.) *See State v. Crotts*, 2004-Ohio-6550, ¶ 27. In other words, "opinion evidence on an ultimate issue is not excludable *per se.*" 1980 Staff Notes to Evid.R. 704. In addition, courts have held that "[i]n domestic violence cases, an officer's testimony regarding the primary physical aggressor does not invade the province of the jury because the officer is not opining on the ultimate issue in the case." *Batie*, 2015-Ohio-762, at ¶ 7 (8th Dist.); *State v. Greig*, 2014-Ohio-4063, ¶ 23 (5th Dist.).

{¶56} Since being the primary aggressor is not an element of domestic violence, Deputy Helfer did not opine on the ultimate issue in the case, nor would that, by itself, require exclusion of his testimony.

---

1. Appellant cites *State v. Fikes*, 2007-Ohio-5870 (1st Dist.), which involved the admissibility of an officer's opinion that a murder defendant had not acted in self-defense. *Id.* ¶ 48-50. The *Fikes* court did not acknowledge the Supreme Court of Ohio's decision in *Johnson*, 2000-Ohio-276. In addition, this Court has distinguished cases in which the challenged opinion testimony involved the defendant's guilt. *Trefney*, 2012-Ohio-869, at ¶ 46 (11th Dist.).

16

Case No. 2024-A-0047

**{¶57}** We find no obvious error in the admission of Deputy Helfer's testimony. Accordingly, Appellant's third assignment of error is without merit.

### Ineffective Assistance

**{¶58}** Appellant's fourth assignment of error states: "Appellant received ineffective assistance of counsel."

**{¶59}** Appellant argues that his trial counsel was ineffective for failing to object to the alleged errors in his first through third assignments of error, i.e., E.B.'s testimony about the protection order, prosecutor misconduct, and Deputy Helfer's opinion testimony.

**{¶60}** "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**{¶61}** Plain error and ineffective assistance of counsel claims employ the same deferential standard of review regarding the element of prejudice. *See Rogers*, 2015-

17

Ohio-2459, ¶ 22. Since Appellant has not established plain error in his first through third assignments of error, he cannot establish ineffective assistance on the same grounds.

**{¶62}** Accordingly, Appellant's fourth assignment of error is without merit.

## Other-Acts Evidence

**{¶63}** Appellant's fifth assignment of error states: "Admission of improper other-acts evidence prejudiced Appellant."

**{¶64}** Appellant challenges three instances in E.B.'s testimony referencing Appellant's past instances of violence. In the first instance, E.B. testified:

Q. Can you describe for the Court what type of marriage you had with Mr. Barefield?
. . .

A. Um, it was rough. It was rocky. Um, he would pick fights with me. He wouldn't come home. Um, it was -- it was rough. Um, he would leave me for days on end with nothing, um, with me and my animals, and it got to the point that enough was enough and *I got tired of being beaten* and --

(Emphasis added.)

**{¶65}** In the second instance, E.B. testified:

Q. Is it fair to say that you were fed up on the date of this particular incident?

A. Oh, I was – it was done. I – I was done. Um.

Q. *Because this wasn't the first time that something like that happened*?

A. *No.*

(Emphasis added.)

In the third instance, E.B. testified:

Q. Okay. And what made you ultimate tase him in this particular incident?

A. Um, he – when he tackled me and he got me down on the bed. My taser, I would sleep with it underneath my pillow, *because there's been previous times that he has attacked me - -*

18

(Emphasis added.)

**{¶66}** "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 401(B)(2).

**{¶67}** The Supreme Court of Ohio has set forth a three-part analysis to determine the admissibility of other-acts evidence. To be admissible, "(1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403." *Graham*, 2020-Ohio-6700, at ¶ 72.

**{¶68}** "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, 2020-Ohio-4440, ¶ 22. A trial court "is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." *Id*.

**{¶69}** Appellant argues that E.B.'s testimony served no proper purpose and that any probative value was substantially outweighed by unfair prejudice. However, as Appellant acknowledges, he objected to all of the above testimony, and the trial court sustained his objections. Therefore, the alleged other-acts evidence was not admitted into evidence.

19

Case No. 2024-A-0047

**{¶70}** Appellant next argues that the trial court erred by failing to give the jury a limiting instruction in its final charge regarding the use of other-acts evidence. Appellant did not request a limiting instruction at trial and, therefore, has forfeited all but plain error. *See State v. Stuart*, 2020-Ohio-3239, ¶ 62 (11th Dist.).

**{¶71}** We find no obvious error. Since the trial court did not admit other-acts evidence, a limiting instruction for other-acts evidence would have served no legitimate purpose.

**{¶72}** Accordingly, Appellant's fifth assignment of error is without merit.

### Cumulative Error

**{¶73}** Appellant's sixth and final assignment of error states: "Cumulative error deprived Appellant of a fair trial."

**{¶74}** Appellant argues that if the errors alleged in his first through fifth assignments of error do not individually constitute reversible error, then their cumulative effect deprived him of a fair trial.

**{¶75}** Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal." *State v. Neyland*, 2014-Ohio-1914, ¶ 257. "[M]ultiple errors that are separately harmless may, when considered together, violate a person's right to a fair trial in the appropriate situation." *State v. Goff*, 1998-Ohio-369, ¶ 96.

**{¶76}** Since we have not found multiple errors, the doctrine does not apply. As explained above, we have found only one obvious error—the admission of E.B.'s

Case No. 2024-A-0047

testimony about the protection order—but have further found that Appellant did not establish prejudice.

{¶77}   Accordingly, Appellant's sixth assignment of error is without merit.

{¶78}   For the foregoing reasons, the judgment of the Ashtabula County Court, Eastern District, is affirmed.


ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-A-0047