[Cite as *State v. Pollard*, 2025-Ohio-1706.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-L-085 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| LAMAR K. POLLARD, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 000084 |

## OPINION AND JUDGMENT ENTRY

Decided: May 12, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel* and *Adam M. Downing*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, LLC, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Lamar K. Pollard, appeals his convictions in the Lake County Court of Common Pleas for Having Weapons While Under Disability and Possession of Cocaine. For the following reasons, we affirm the judgment of the lower court.

{¶2} On February 20, 2024, Pollard was indicted by the Lake County Grand Jury for Having Weapons While Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3); two counts of Improperly Handling Firearms in a Motor Vehicle, felonies of the fourth degree, in violation of R.C. 2923.16(B) and (D)(1); Carrying

Concealed Weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2); and Possession of Cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A). Each count also contained forfeiture specifications.

{¶3}   A jury trial was held on September 23 and 24, 2024.  The following pertinent testimony and evidence were presented:

{¶4}   On the morning of December 31, 2023, officers Meghan Blair and Ryan Thomas of the Wickliffe Police Department were dispatched to the location of a store that a female, Najah Weeams, refused to leave.  Blair observed that Weeams was having difficulty answering questions and had glossy eyes and Thomas believed Weeams to be intoxicated.  The officers went to the nearby gas station where Weeams' car was parked, and were joined by another officer, Nathaniel Heaton.  The officers observed Pollard sitting in the passenger seat, sleeping and unresponsive.  Blair knocked on the window to ensure he was not having medical issues.

{¶5}   The officers subsequently opened the vehicle door and observed an unsealed bottle of alcohol on the front passenger floorboard.  They requested that Pollard identify himself, which he refused to do.  He was asked to step out of the vehicle but did not comply and argued with the officers.  All three officers indicated that, at that time, they had not yet observed a firearm in the vehicle, although they had observed and removed the bottle of alcohol in that area.

{¶6}   The three officers began physically attempting to remove Pollard from the vehicle.  Blair testified that Pollard stiffened his legs and pushed against the seat to prevent removal from the vehicle and Heaton indicated that Pollard had "pinned" his leg against the glovebox area.  Heaton testified: "I was down at his feet . . . trying to get his

feet out and there was not a gun there before and once I started pulling on his shoulder, then I saw the gun on the floor" below Pollard's left foot. Heaton stated "gun" and removed it from the vehicle. Thomas and Blair both heard Heaton yell "gun." Blair observed him remove the gun from the front seat passenger floorboard. Blair had not seen where the gun came from but heard a thud around the time Heaton said "gun." She testified that the firearm would have been in the reach of Pollard based on where it was recovered. Pollard was removed from the vehicle and Blair observed a bag that was "like a purse" on the passenger's seat near the center console.

{¶7} After Pollard was removed from the vehicle and handcuffed, Thomas and Blair saw a baggie containing a white, powdery substance and Pollard's EBT card on the ground near where he was lying. The baggie was later found to contain cocaine. Blair and Thomas had not previously seen these items outside of the vehicle when they approached it earlier.

{¶8} Video from police body cameras was played in which the officers discussed the circumstances and Patrolman Heaton stated that the gun was not on the floor before they pulled him out. Blair stated that "[h]e must have been sitting on it."

{¶9} According to Thomas, at the police station, Pollard indicated that the gun belonged to Weeams and he "was only sitting on it during the incident." Pollard refused to provide a DNA sample and stated that he had "already touched the firearm." According to Thomas, Pollard stated that the two had been out together, Weeams had dropped the firearm multiple times, and he "picked the firearm up and held onto it so that she would not lose" it. Heaton testified that Pollard "stated that it was her gun and that he came in possession of it because she was in the middle of the road and drunk and . . . dropping

Case No. 2024-L-085

her gun all over the place and so he took the gun as like safekeeping -- of the gun."

{¶10} The jury found Pollard guilty of each of the counts as charged in the indictment. At the sentencing hearing, the court ordered Pollard to serve concurrent prison terms of 30 months for Having Weapons While Under Disability and 9 months for Possession of Cocaine and merged the remaining offenses.

{¶11} Pollard timely appeals and raises the following assignments of error:

{¶12} "[1.] The Court Committed Plain Error in Allowing a Police Officer to Offer His Legal Opinion on the Ultimate Issue of Possession."

{¶13} "[2.] Mr. Pollard's Conviction Was Not Supported by Sufficient Evidence."

{¶14} "[3.] Mr. Pollard's Conviction was Against the Manifest Weight of the Evidence."

{¶15} We will consider the assignments of error out of order for ease of discussion. In his second assignment of error, Pollard argues that his convictions were not supported by sufficient evidence since the mere presence of a gun in his vicinity did not prove possession and the cocaine was not seen on Pollard's person. In his third assignment of error, he argues that his convictions were not supported by the weight of the evidence, reasserting that possession of the two items was not demonstrated by the evidence. We will address these assignments of error jointly since they are interrelated.

{¶16} In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶17} While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Barnes*, 2023-Ohio-353, ¶ 43 (11th Dist.).

{¶18} As an initial matter, we need not consider any issues relating to sufficiency or weight of the evidence for Improperly Handling Firearms in a Motor Vehicle and Carrying Concealed Weapons since these were merged into the offense of Having Weapons While Under Disability. "[W]here allied offenses are merged and there is sufficient evidence on the offense for which defendant is sentenced, errors relating to sufficiency and weight of the evidence on the count that is merged are harmless and need not be considered." *State v. Abdullah*, 2022-Ohio-3977, ¶ 28 (11th Dist.).

{¶19} Pursuant to R.C. 2923.13(A)(3), "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if" they have been convicted of or are under indictment for a felony drug offense. Under R.C. 2925.11(A), "[n]o person shall

knowingly obtain, possess, or use a controlled substance or a controlled substance analog."  "In order to 'have' a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it."  *State v. Teachout*, 2007-Ohio-1642, ¶ 29 (11th Dist.).  Likewise, possession of a drug may be actual or constructive.  *State v. Hudson*, 2018-Ohio-133, ¶ 46 (11th Dist.).

{¶20}  Pollard's arguments relating to the weight and sufficiency of the evidence center around his contention that the State did not prove he possessed or had on his person either the gun or the cocaine.

{¶21}  Under R.C. 2925.01(K), "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  In relation to possession for the purposes of Having Weapons While Under Disability, this court has held that "[a]ctual possession requires ownership and/or physical control."  (Citation omitted.)  *State v. Johnson*, 2025-Ohio-890, ¶ 40 (11th Dist.).

{¶22}  "Constructive possession exists when an individual is able to exercise dominion or control over an item, even if the individual does not have the item within his immediate physical possession."  (Citation omitted.)  *State v. Perry*, 2021-Ohio-2183, ¶ 27 (11th Dist.).  The presence of a firearm or drugs in the same area or the premises of the defendant "without more is insufficient to support an inference of constructive possession."  *State v. Dickerson*, 2015-Ohio-938, ¶ 37 (11th Dist.); *State v. Parker*, 2018-Ohio-3239, ¶ 34 (11th Dist.).  It is also necessary to show that the defendant was "conscious of the presence of that object."  *State v. Foti*, 2024-Ohio-699, ¶ 28 (11th Dist.); *Perry* at ¶ 27.  Constructive possession may be established "entirely by circumstantial

evidence." (Citation omitted.) *Parker* at ¶ 33.

{¶23} As to possession of the firearm, the State presented evidence that the officers recovered a firearm from the passenger floorboard after struggling to physically remove Pollard from the vehicle. They indicated that, prior to attempting to remove Pollard from the vehicle, they had not observed the gun on the floor. During the struggle, and after a "thud" sound, the gun was recovered from the floor in the area Pollard was seated. This demonstrates that the gun was within his vicinity and control, as it necessarily must have been in the area where he was seated to fall to the ground on his side of the vehicle.

{¶24} Pollard argues that the gun could have been in Weeams' purse, which was located in the area he was seated, and the State did not demonstrate he was aware of the gun. While it is required that a defendant have awareness of the existence of the gun to establish constructive possession, Pollard's own statements to police establish that fact. He indicated that he had taken the gun from Weeams for "safekeeping." These statements demonstrate he was aware of the gun and admitted that he had taken it into his possession. In fact, Pollard's admitted "safekeeping" is clearly an instance of actual possession. His argument that it may have fallen from the purse is contrary to his statement that he took it for safekeeping. His knowledge of the gun's presence is also buttressed by his failure to comply with police instructions to exit the vehicle and physical resistance when they attempted to remove him from his seat. A defendant's behavior when confronted by police is relevant circumstantial evidence of possession of an illegal item. *State v. Hobbs*, 2024-Ohio-2601, ¶ 22 (11th Dist.) (the defendant's failure to identify himself to police supported an inference that he was aware of the presence of a firearm

in the vehicle); *State v. Robinson*, 2021-Ohio-3715, ¶ 25 (10th Dist.) (nervous behavior is circumstantial evidence of constructive possession). Here, the existence of the facts above in addition to proximity to the firearm demonstrate that he was in constructive possession of it. *See State v. Kessler Scott*, 2022-Ohio-4054, ¶ 32 (11th Dist.) (constructive possession is proven where there is not evidence of just mere proximity but "multiple factors from which inferences can be drawn that" the item was in the defendant's possession).

{¶25} Pollard also notes that the vehicle and the gun were not owned by him. A defendant is not required to have ownership of the possessed item to establish constructive possession. *Perry*, 2021-Ohio-2183, at ¶ 32 (11th Dist.) ("[a]ssuming arguendo that the Sig Sauer belonged to Bozeman and that she merely handed it to Perry to hide under the seat, it would be enough to sustain [Perry's] convictions").

{¶26} As to possession of the drugs, the officers testified that, after Pollard was removed from the vehicle, they located a baggie of cocaine near an EBT card bearing his name. These items were located on the ground near the car and where he was handcuffed. The officers testified they had not seen the items on the ground when initially approaching the vehicle. Given the cocaine's proximity to a card identifying Pollard and the struggle that occurred to remove him from the vehicle near these items, the evidence establishes that the cocaine was in Pollard's possession. *See State v. Cenker*, 2007-Ohio-921, ¶ 49 (5th Dist.) (possession was demonstrated where drugs were recovered in a container with appellant's identification card).

{¶27} For the foregoing reasons, the testimony of the officers supports a determination that Pollard was in possession of both the firearm and the cocaine and the

offenses of Possession of Cocaine and Having Weapons While Under Disability were supported by both the manifest weight and the sufficiency of the evidence.

{¶28} The second and third assignments of error are without merit.

{¶29} In his first assignment of error, Pollard argues that Officer Heaton was not permitted to testify whether Pollard was in possession of the gun since it was an ultimate issue to be decided by the jury.

{¶30} Pollard did not object to this testimony at trial. Where a party does not object to the admission of testimony, a plain error standard of review is applied. *State v. Barefield*, 2025-Ohio-433, ¶ 48 (11th Dist.). "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "In order to prevail under a plain error standard, an appellant must demonstrate that there was an obvious error in the proceedings and, but for the error, the outcome would have been otherwise." *State v. Lefkowitz*, 2022-Ohio-4052, ¶ 15 (11th Dist.).

{¶31} Pollard cites *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraph one of the syllabus, for the proposition that "an opinion, whether expert or otherwise, may not be admitted when it, in effect, answers the very question as to the existence or non-existence of an ultimate fact to be determined by the jury."

{¶32} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." Evid.R. 701. Pursuant

Case No. 2024-L-085

to Evid.R. 702, a witness may testify as an expert where the witness' testimony "relates to matters beyond the knowledge or experience possessed by lay persons;" the witness is qualified by specialized knowledge, skill, experience, training or education; and the testimony is based "on reliable scientific, technical, or other specialized information."

{¶33} Evid.R. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." "In other words, 'opinion evidence on an ultimate issue is not excludable *per se*.'" *State v. Barefield*, 2025-Ohio-433, ¶ 55 (11th Dist.), citing 1980 Staff Note, Evid.R. 704. Instead, "[t]he rule must be read in conjunction with Rule 701 and Rule 702, each of which requires that opinion testimony be helpful to, or assist, the trier of the fact in the determination of a factual issue. Opinion testimony on an ultimate issue is admissible if it assists the trier of the fact, otherwise it is not admissible. The competency of the trier of the fact to resolve the factual issue determines whether or not the opinion testimony is of assistance." *State v. Grant*, 1993 WL 273402, *3 (11th Dist. July 21, 1993), citing 1980 Staff Note, Evid.R. 704.

{¶34} Pollard initially argues that the testimony offered was lay testimony, since Heaton was not qualified as an expert witness. Whether such testimony was expert or lay testimony, we find no reversible error.

{¶35} Officer Heaton was not questioned about whether he believed Pollard was guilty of the charges or whether he was in "possession" of the firearm for the purposes of establishing the charge of Having Weapons While Under Disability. *See State v. Zachery*, 2021-Ohio-2176, ¶ 79 (11th Dist.) ("[c]oncern has been expressed that when an officer opines on a defendant's guilt, it can infringe on the province of the trier of fact"). However,

he did testify that, while Pollard was at the jail, he "was arguing the points of possession of the firearm stating that the gun was not his and he believed that sitting on the gun did not mean that he was in possession of the gun.  So just arguing that point of that's not really being in possession of it and being -- me and probably Patrolman Thomas, but I'll just speak for myself, saying that sitting on it is in possession -- of the gun."  Whether this could assist the trier of fact in determining any factual issues relating to possession is questionable.  Although this was an explanation of a discussion that occurred between Pollard and Heaton, it also did tend to show Pollard's belief regarding the issue of possession and legal conclusion rather than a factual observation or conclusion based on scientific or technical information.  *See State v. Smith*, 2015-Ohio-1736, ¶ 16 (8th Dist.), citing *State v. Marrero*, 2011-Ohio-1390, ¶ 46 (10th Dist.) ("when the opinion testimony is stated as a legal conclusion, it will not be 'helpful' because 'the testimony attempts to answer, rather than aid the jury in answering, the ultimate question at issue'").

**{¶36}**  Nonetheless, even if we presume that Heaton's testimony on this issue was inadmissible, this would not constitute reversible error.  As this court has found, even where an impermissible statement as to the ultimate issue is admitted, it is harmless error where there is substantial evidence of guilt.  *Zachery* at ¶ 79; *State v. Fambro*, 2017-Ohio-5646, ¶ 51 (11th Dist.), citing *State v. Webb*, 70 Ohio St.3d 325, 335 (1994) ("[n]onconstitutional error is harmless if there is substantial other evidence to support the guilty verdict").  As described above, multiple officers testified regarding the facts surrounding the possession of the firearm and that the firearm was recovered from the vehicle while removing Pollard.  The officers did not see the firearm when immediately looking in the car and it was only recovered near his feet after Pollard moved.

Case No. 2024-L-085

Significantly, Pollard himself indicated that he had taken control of the firearm from Weeams for safekeeping. This constitutes substantial evidence of Pollard's guilt of the offense of Having Weapons While Under Disability.

{¶37} The first assignment of error is without merit.

{¶38} For the foregoing reasons, Pollard's convictions in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that Pollard's convictions in the Lake County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH


_____
JUDGE JOHN J. EKLUND,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---