[Cite as *State v. Hobbs*, 2024-Ohio-2601.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-L-098** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| KENNETH L. HOBBS, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 000007 |

**O P I N I O N**

Decided: July 8, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Allison F. Hibbard*, 4403 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Kenneth Hobbs, appeals his convictions for Having Weapons While Under Disability, Failure to Disclose Personal Information, and Falsification in the Lake County Court of Common Pleas. For the following reasons, we affirm Hobbs' convictions.

{¶2} On March 7, 2023, Hobbs was indicted on the following charges: Having Weapons While Under Disability (Count 1), a felony of the third degree in violation of R.C. 2923.13(A)(3); Failure to Disclose One's Personal Information (Count 2), a misdemeanor

of the fourth degree in violation of R.C. 2921.29(A)(1); Falsification (Count 3), a misdemeanor of the first degree in violation of R.C. 2921.13(A)(3); and a Red Light Violation (Count 4), a minor misdemeanor in violation of R.C. 4511.13(C)(1)(a).

{¶3} On July 17, 2023, a bench trial was held. Prior to the commencement of trial, the State dismissed the Red Light Violation (Count 4). The following evidence was given at trial:

{¶4} Jonathan Mehm, a patrol officer with the Willoughby Police Department, testified that, on December 14, 2022, he observed a silver Mercedes SUV run the red light at the intersection of Euclid Avenue and Wilson Avenue. Mehm initiated a traffic stop and identified Hobbs as the driver of the vehicle. Hobbs was "argumentative" and "immediately uncooperative." Hobbs denied running the red light and refused to provide identification. Mehm ordered Hobbs out of the vehicle and patted him down. Hobbs told Mehm that his name was Jeffrey but refused to provide his birthdate or other identification. Mehm placed Hobbs under arrest. A loaded firearm and a wallet with an identification card were recovered from the vehicle. Mehm recognized the suspect he had arrested as the person on the identification card which identified him as Kenneth Hobbs. A trace of the firearm revealed that Hobbs did not purchase the weapon and that it was not reported stolen. While booking Hobbs, Mehm learned that Hobbs was not allowed to be in possession of a firearm. Dashcam video of the stop was played for the court.

{¶5} Patrolman Dominic Disanto of the Willoughby Police Department testified that he was called to assist Patrolman Mehm during the traffic stop involving Hobbs. Disanto did not engage directly with Hobbs but conducted the inventory search of his vehicle after Hobbs was placed under arrest. On the rear floorboard, behind the

2

passenger's seat and within an arm's reach of the driver's seat, Disanto found a satchel about the size of a "large iPhone 12." Within the satchel were a firearm and an identification card belonging to Hobbs.

{¶6} Rebecca Silverstein-Groce, the firearm and latent prints technical leader at the Lake County Crime Laboratory, performed an analysis on the Ruger LCP firearm recovered from Hobbs' vehicle and determined it was operable.

{¶7} Alexandra Colon, a probation officer with the Cuyahoga County Adult Probation Department, testified that, on January 15, 2009, in Cuyahoga County C.P. No. CR-08-517063, Hobbs was convicted of felony Drug Possession.

{¶8} At the conclusion of trial, the trial court found Hobbs guilty of Having Weapons While Under Disability, Failure to Disclose Personal Information, and Falsification.

{¶9} On September 27, 2023, the trial court sentenced Hobbs to three years community control on each count to be served concurrently with each other.

{¶10} On appeal, Hobbs raises the following assignments of error:

[1.] Trial counsel was ineffective for failing to file a motion to suppress the evidence obtained as a result of the traffic stop.

[2.] Appellant's conviction is against the manifest weight of the evidence; therefore, his conviction is in violation of the Ohio State Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

{¶11} "To establish ineffective assistance, [a defendant] must show (1) that defense counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced him, i.e., that there is a reasonable probability that but for

3

counsel's errors, the proceeding's result would have been different." *State v. Nicholson*, 2024-Ohio-604, ¶ 318. "A reasonable probability is a probability sufficient to undermine [the court's] confidence in the outcome." (Citation omitted.) *Id.*

{¶12} "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se." *State v. Brown*, 2007-Ohio-4837, ¶ 65. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *Id.* "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." (Citations omitted.) *State v. Neyland*, 2014-Ohio-1914, ¶ 126.

{¶13} Hobbs contends that trial counsel was ineffective for not challenging the initiation of the traffic stop for running a red light: "Mr. Hobbs was charged with a Red Light Violation in Count Four of the indictment, however that count was dismissed by the trial court after conducting a bench trial. Accordingly, it cannot be said that there was no reasonable probability of success with regard to a suppression motion. . . . Therefore it was unreasonable not to file a Motion to Suppress the evidence found, especially the firearm, as the result of the traffic stop and counsel's failure to do so was deficient." Appellant's brief at 6.

{¶14} "It is well settled that 'any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance.'" (Citation omitted.) *State v. Moreland*, 2017-Ohio-9383, ¶ 13 (7th Dist.); *State v. Beavers*, 2009-Ohio-4214, ¶ 12 (10th Dist.). Thus, "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is

4

prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays*, 2008-Ohio-4539, ¶ 8. "The State does not have to charge a motorist with a traffic violation in order to use the facts of such a violation to support reasonable suspicion to initiate a traffic stop." *State v. Neitzel*, 2019-Ohio-2122, ¶ 49 (5th Dist.). "The State is only required to present reasonable and articulable facts which support the traffic stop." *Id.*; *State v. Reese*, 2018-Ohio-2981, ¶ 22 (6th Dist.).

{¶15} The record before this Court fails to substantiate Hobbs' claim that a motion to suppress based on a lack of a reasonable and articulable suspicion to initiate a traffic stop had a probability of success. Contrary to Hobbs' argument, the Red Light Violation was not dismissed by the trial court after the conclusion of the bench trial. Instead, it was dismissed by the State prior to opening statements and without explanation. Nevertheless, the State argued at trial that the stop was based on Officer Mehm's observation of the violation: "As we approached the light at Wilson Avenue on Euclid Avenue going westbound the silver Mercedes that was in front . . . ran the red light at that intersection. He approximately . . . had two car lengths, 20-ish feet to stop the vehicle safely at the light and continued through the light . . . violating [the] Ohio Revised Code." This testimony is corroborated by the dashcam video from Mehm's police cruiser.

{¶16} The first assignment of error is without merit.

{¶17} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the defendant from conviction except upon proof beyond a reasonable doubt of 'all of the elements included in the definition of the offense of which the defendant is charged.'" *State v. Ireland*, 2018-Ohio-4494, ¶ 38, citing *Patterson v.*

5

*New York*, 432 U.S. 197, 210 (1977). "Reasonable doubt speaks to the extent to which the fact-finder must be convinced that a party met its burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 17. The term "'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It "concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Citation omitted.) *Id.* at ¶ 12.

{¶18} "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger* at ¶ 26. "[W]hen an appellate court reviews whether a judgment is against the manifest weight of the evidence, the court looks at the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered."'" (Citations omitted.) *State v. Jordan*, 2023-Ohio-3800, ¶ 17. The Supreme Court of Ohio has "described the appellate court's role in manifest-weight review as that of a "'thirteenth juror'" who may disagree with the fact-finder's resolution of the conflicting evidence." (Citations omitted.) *State v. Martin*, 2022-Ohio-4175, ¶ 26. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citation omitted.) *State v. Ford*, 2019-Ohio-4539, ¶ 340.

{¶19} Under the second assignment of error, Hobbs argues that his conviction for Having Weapons While Under Disability was against the weight of the evidence. In order to convict Hobbs of this charge, the State was required to prove beyond a reasonable

6

doubt that he did "knowingly acquire, have, carry, or use any firearm" and "has been convicted of any felony offense involving the illegal possession … [of] any drug of abuse." R.C. 2923.13(A)(3).

{¶20} Hobbs' arguments focus on whether he did knowingly acquire, have, carry, or use a firearm: "First and foremost, the firearm was located in a bag on the back floorboard of the vehicle, not out in the open. There were no photos taken of where exactly the gun was found inside the car (which was registered to Mr. Hobbs' mother), and no photos taken of the gun at the scene. The firearm itself was registered to a woman and never reported stolen. At the time of the arrest, Mr. Hobbs made no statements pertaining to the firearm and no statements regarding how long he had been using the vehicle. Next, the firearm was swabbed for DNA but it was never tested for DNA. The firearm was not even submitted for fingerprint analysis. Law enforcement could not say whether Mr. Hobbs had ever even held the firearm. Although Mr. Hobbs' ID was allegedly found inside the bag with the firearm, the ID was not kept by police and not entered into evidence. Mr. Hobbs never took ownership of the gun or the bag." (Citations to the record omitted.) Appellant's brief at 8.

{¶21} We do not find that the evidence in the present case weighs heavily against the conviction for Having Weapons While Under Disability. The element of "knowingly hav[ing]" or "carry[ing]" a firearm is established under the theory of constructive possession. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Hobbs' dominion and control over the firearm is readily demonstrated by the undisputed

7

facts that Hobbs was the driver and sole occupant of the vehicle, and that the firearm was recovered from the backseat of the vehicle. *State v. Fry*, 2004-Ohio-5747, ¶ 41 (4th Dist.) ("possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile"); *see, e.g., State v. Washington*, 2023-Ohio-4735, ¶ 23 (7th Dist.) ("[t]here is no question that Appellant exercised dominion and control over the vehicle where the cocaine was found" when "[h]e was the driver and sole occupant of the vehicle"); *State v. Gilbert*, 2006-Ohio-3595, ¶ 43 (8th Dist.) ("[t]he theory of constructive possession … supports the drug conviction" where the "appellant was the driver and sole occupant of the vehicle").

{¶22} Hobbs' knowledge or awareness of the presence of the firearm is readily inferred from the discovery of the firearm in a satchel with Hobbs' wallet coupled with Hobbs' refusal to properly identify himself and even falsely claiming that he did not have identification. *State v. Davis*, 2022-Ohio-577, ¶ 27 (5th Dist.) ("[t]he jury could infer appellant's knowledge of the presence of the contraband based upon his deceptive behaviors"); *State v. Floyd*, 2019-Ohio-4878, ¶ 19-20 ("[a]lthough the firearm was not necessarily in plain view, it was readily accessible to Appellant when he was in the master bedroom of the house" where "a wallet was found containing Appellant's ID and bank cards").

{¶23} Hobbs' arguments to the contrary are unconvincing. That Hobbs may not have owned either the vehicle or the firearm is irrelevant to the fact that, at the time of the stop, the firearm was under his dominion and control. *State v. Yelling*, 2004-Ohio-5185, ¶ 11 (9th Dist.) ("ownership is not a prerequisite to determining whether someone 'had' the weapon") (citation omitted). Likewise, the absence of DNA or fingerprint evidence

8

does not undermine the conviction inasmuch as it was not necessary for him to have actually handled the firearm. *State v. Rollison*, 2017-Ohio-8936, ¶ 23 (3d Dist.) ("the State did not have to prove that Rollison was brandishing, holding or touching the gun, only that he *possessed* it"). There is no reason to doubt the officers' testimony that Hobbs' wallet was found in a satchel with the firearm on the back floorboard of the vehicle despite the absence of photographic evidence or the wallet itself being in evidence. Patrolman Disanto can be seen on the dashcam video conducting the inventory search of the interior of the vehicle (but not the hatchback) and removing the satchel. Finally, the police must have found Hobbs' identification in order to determine who he was since Hobbs never provided them with his real name or birthdate.

{¶24} The second assignment of error is without merit.

{¶25} For the foregoing reasons, Hobbs' convictions for Having Weapons While Under Disability, Failure to Disclose Personal Information, and Falsification are affirmed. Costs to be taxed against the appellant.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

9

Case No. 2023-L-098