[Cite as *State v. Peterson*, 2025-Ohio-2937.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-P-0075 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| SETH A. PETERSON, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00351 |

## OPINION AND JUDGMENT ENTRY

Decided: August 18, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Seth A. Peterson, appeals his convictions for tampering with evidence and aggravated trafficking and/or possession of drugs. For the following reasons, Peterson's convictions are affirmed.

***Substantive and Procedural History***

{¶2} On May 2, 2024, the Portage County Grand Jury returned an indictment against Peterson charging him with tampering with evidence (count one); aggravated trafficking in drugs (count two); aggravated possession of drugs (count three); failure to comply with order or signal of police officer (count four); and driving under suspension (count five).

{¶3}   On October 22-24, 2024, the case was tried before a jury in Portage County. Prior to trial, the driving under suspension charge (count five) was dismissed *nolle prosequi*.  The following relevant testimony was presented:

{¶4}   Patrolman Brock Wise of the Ravenna Police Department testified that, on April 26, 2024, at about 10:00 p.m., he observed an orange Nissan Kicks exiting the Paige Street Apartments onto Paige Street.  Wise recognized the vehicle as belonging to a woman recently taken into custody for drug-related felony warrants.  He suspected Peterson who also had multiple felony warrants was operating the vehicle.  He followed the vehicle to Riddle Avenue.  After observing the vehicle stop in a marked crosswalk, Wise initiated a traffic stop.  The vehicle initially stopped on King Street, but fled when Wise exited his police cruiser.  The vehicle continued down a variety of streets, running stop signs and red lights and reaching speeds in excess of 60 m.p.h.  Wise pursued the vehicle to Interstate 76 continuing west to Interstate 77 until the Copley/Fairlawn area west of Akron.

{¶5}   The dash cam video from Officer Wise's police cruiser was played for the jury.  Along Summit and Prospect Streets, the driver's arm can be seen outside the window.  Wise testified that "plastic bags" and a "crystal-like substance" were being thrown from the window.  The crystal-like substance had "almost like a rock consistency." It was hitting the windshield so Wise radioed the other officers in pursuit to close their windows to avoid contamination.  On the interstate, the vehicle wove through traffic at speeds in excess of 90 m.p.h.  The vehicle was brought to a stop in Summit County through the deployment of spike strips, a "rolling road block," and the presence of road construction.

{¶6}   Peterson was taken out of the car and placed in handcuffs.  Inside the vehicle, Officer Wise noted "a large amount of crystal-like substance throughout the entire vehicle mostly on the driver's floorboard" as well as "a large amount of clothing and miscellaneous items."  There was also a white fog that he believed was caused by narcotics being blown around by the air.  Other items recovered from the vehicle included plastic baggies, a small safe, a digital scale, and $515 in loose cash.  About a half an hour after the pursuit ended, narcotics were recovered from the streets where Peterson was seen throwing them from the window.

{¶7}   Patrolman Christopher Dynys of the Ravenna Police Department testified that, on April 26, 2024, he monitored the radio traffic regarding the pursuit of Peterson, noting that Peterson was reported to be throwing items, possibly drugs, from the vehicle.  Within about fifteen minutes of the reported pursuit, Dynys went to South Prospect Street where he recovered a baggie containing a white substance.  Dynys' bodycam video was played for the jury.

{¶8}   Patrolman Alexander DeHoff of the Ravenna Police Department testified that, on April 26, 2024, he participated in the pursuit of Peterson.  As he was travelling on Summit Street approaching Prospect Street, Patrolman Wise advised that Peterson was throwing narcotics from the vehicle.  He observed a plastic bag "going across the road" and "hear[d] what sounded like little rocks hitting [his] vehicle and almost kind of like a dusty cloud in that area."

{¶9}   After Peterson's vehicle was brought to a stop, Patrolman DeHoff conducted a search of it.  There was an open safe on the front passenger's seat with a digital scale and a "crystalline substance" which appeared to be methamphetamine inside

Case No. 2024-P-0075

it. There were also crystalline substances on the driver's side floorboard, including "the largest singular piece [he had] ever seen." In the front seat area, DeHoff found unused hypodermic needles and small baggies. DeHoff's bodycam video was played for the jury.

{¶10} Patrolman Adam Mohler of the Ravenna Police Department testified that, on April 26, 2024, he unsuccessfully attempted to join the pursuit of Peterson. Instead, he went to Summit Street where Patrolman Wise had advised that Peterson was throwing narcotics from the vehicle. He arrived within minutes. Mohler initially searched the side of the road but, upon learning the narcotics were thrown from the driver's side window, he searched the middle of the road. There he located a pile of white crystalline substance that he believed to be methamphetamine. The substance was collected in an evidence baggie. Mohler's bodycam video was played for the jury.

{¶11} Martin Lewis, a forensic scientist with the Bureau of Criminal Identification and Investigation, analyzed the substances recovered by law enforcement from scenes associated with Peterson's flight and arrest. Lewis testified as follows regarding four submissions received from law enforcement: Exhibit 24 collected from the driver's side floorboard of the vehicle: "a crystalline substance [with a] weight [of] 17.80 grams and … contain[ing] methamphetamine"; Exhibit 17 collected from the safe in the vehicle: "a crystalline substance, weighed 0.74 grams … contain[ing] methamphetamine"; Exhibit 31 recovered from Summit Street: "a crystalline substance weighing 0.66 grams and … contain[ing] methamphetamine"; and Exhibit 21: "a white substance weighing 1.61 grams and … found to contain xylazine and fentanyl." The aggregate weight of the evidence submitted for testing, which was found to contain methamphetamine, was 19.20 grams.

{¶12} The jury found Peterson guilty of the four remaining charges.

{¶13} On November 4, 2024, the sentencing hearing was held. The trial court merged counts two (aggravated trafficking) and three (aggravated possession) and the state chose to proceed with count two. The court sentenced Peterson to an indefinite sentence of seven to ten and a half years for aggravated trafficking, thirty-six months for failure to comply, and twelve months for tampering with evidence. Peterson's aggregate sentence is eleven to fourteen and a half years.

### Assignments of Error

{¶14} [1.] Mr. Peterson's convictions for aggravated possession and/or aggravated trafficking are not supported by sufficient evidence to sustain a conviction.

{¶15} [2.] Mr. Peterson's conviction for tampering with evidence is against the manifest weight of the evidence.

{¶16} [3.] The trial court erred in failing to grant Mr. Peterson's motion in limine.

### First Assignment of Error: Sufficiency of the Evidence

{¶17} Sufficiency of the evidence is a "term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 1997-Ohio-52, ¶ 23 ("[i]n essence, sufficiency is a test of adequacy"). When reviewing the sufficiency of the evidence, an appellate court considers "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A challenge to the sufficiency of the evidence presents a question of law, which on appeal is reviewed de novo." *State v. Dunn*, 2024-Ohio-5742, ¶ 28.

### *Aggravated Possession and/or Trafficking*

{¶18} In order to convict Peterson of aggravated possession, the state was required to prove that he "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or a controlled substance analog." R.C. 2925.11(A). If the controlled substance is a schedule II-controlled substance, its possession constitutes aggravated possession. "[A]ggravated possession of drugs is a felony of the fifth degree." R.C. 2925.11(C)(1)(a). However, "[i]f the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term." R.C. 2925.11(C)(1)(c).

{¶19} In order to convict Peterson of aggravated trafficking, the state was required to prove that he knowingly "[p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2). If the controlled substance is a schedule II-controlled substance, its possession constitutes aggravated trafficking. "[A]ggravated trafficking in drugs is a felony of the fourth degree." R.C. 2925.03(C)(1)(a). However, "if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term." R.C. 2925.03(C)(1)(d).

{¶20} Methamphetamine is a schedule II-controlled substance classified as a stimulant. Adm.Code 4729:9-1-02(C)(2). The bulk amount of methamphetamine is three grams. R.C. 2925.01(D)(1)(g).

{¶21} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

### *Whether Peterson Knowingly Possessed and/or Transported Methamphetamine*

{¶22} Peterson's first argument is that there was no evidence connecting him to the methamphetamine in question beyond the fact that he was driving his girlfriend's car on the date in question. "Mr. Peterson did not knowingly possess or traffic drugs, but was merely driving a vehicle, owned by his girlfriend, who had been arrested on felony warrants for drug-related offences, and who had all of her earthly possessions in the vehicle, including those related to drugs." Appellant's brief at 10.

{¶23} There is abundantly sufficient evidence in the record that Peterson knowingly possessed and/or transported methamphetamine. Primarily, there is the evidence that Peterson was actively disposing of methamphetamine during his flight from police by throwing it from the vehicle. Inasmuch as Peterson necessarily had control of

the methamphetamine to dispose of it, he had actual possession of it[1]. R.C. 2925.01(K) ("'[p]ossess' or 'possession' means having control over a thing or substance"); *State v. Foti*, 2024-Ohio-699, ¶ 28 (11th Dist.) ("[a] person has 'actual possession' of an item if the item is 'within his immediate physical possession'") (citation omitted). Inasmuch as Peterson was fleeing from the police, Peterson's possession and/or trafficking the methamphetamine was knowing. *State v. Echols*, 2024-Ohio-5088, ¶ 32 ("[i]t is today universally conceded that the fact of an accused's flight, … and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself") (citation omitted).

{¶24} We note that, even without evidence of direct physical control, the fact that Peterson was the sole occupant of the vehicle with the ability to exercise control and dominion of the methamphetamine found in plain view (as well as the other contents of the vehicle) bolstered by his flight from the police readily establishes constructive possession. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. The circumstances cited above support a finding of constructive possession in the present case. The methamphetamine in the vehicle was readily accessible to Peterson and his knowledge of its presence can be demonstrated by it being in plain view and/or his flight from police. *State v. Hobbs*, 2024-Ohio-2601, ¶ 21 (11th Dist.) ("Hobbs' dominion and control over the firearm is readily demonstrated by the undisputed facts that Hobbs was

---

1. It will be recalled that the aggravated possession and trafficking charges were based on the methamphetamine recovered from Prospect Street, the floorboard of the vehicle, and an open safe on the passenger's seat of the vehicle.

Case No. 2024-P-0075

the driver and sole occupant of the vehicle, and that the firearm was recovered from the backseat of the vehicle"); *State v. Ellis*, 2020-Ohio-1115, ¶ 40 (8th Dist.) ("the defendant's attempt to flee led to a natural inference that he was aware of the gun's presence") (citation omitted); *State v. Hanshaw*, 2009-Ohio-2515, ¶ 8 (9th Dist.) ("drugs that are found in plain view and are in close proximity to a defendant can establish constructive possession") (citation omitted).

{¶25} Finally, Peterson emphasizes that the vehicle and its contents most likely belonged to Peterson's girlfriend. Assuming, *arguendo*, that the foregoing is true, it would not negate the evidence supporting possession and trafficking inasmuch as ownership of the drugs is not a prerequisite for possession. *Hobbs* at ¶ 23.

### Whether the State Proved that the Amount of Methamphetamine Involved Exceeded Five Times the Bulk Amount

{¶26} Peterson's second argument is that the state did not and could not prove, beyond a reasonable doubt, the amount of methamphetamine recovered inasmuch as, in the process of collecting the methamphetamine, it was "literally scraped from the roadway and/or the dirty interior of the vehicle." "[B]ecause a foreign substance was mixed together with the crystal-like substance, the State did not prove, beyond a reasonable doubt, that Mr. Peterson possessed and/or trafficked five times the bulk amount but … less than fifty times the bulk amount of Methamphetamine." Appellant's Brief at 11.

{¶27} The bulk amount of methamphetamine is 3 grams and five times that amount is 15 grams. The State introduced evidence of an aggregate of 19.20 grams of methamphetamine in 3 exhibits: 17.80 grams from the floorboard (Exhibit 24), 0.74 grams from the safe (Exhibit 17), and 0.66 grams from Summit Street (Exhibit 31). The collection of the methamphetamine was documented through the officers' testimony and body cam

Case No. 2024-P-0075

video. The methamphetamine contained in Exhibit 24 by itself exceeds five times the bulk amount by 2.80 grams.

{¶28} During cross-examination, Lewis, the BCI forensic scientist, described Exhibit 24 as "a larger chunk of crystal material as well as smaller [pieces]." Morris weighed the entire contents of the package and took a random sample for testing. Morris noted that "[t]here are some small flecks of brown material" in the package, "a few, numerous, hard to number," although "the vast majority is crystalline." Morris could not say what the "brown specks" were. The contents of Exhibit 17 also contained flecks distinguishable from the white crystalline substance.

{¶29} The issue raised by Peterson is illustrated by the case of *State v. Bilah*, 2023-Ohio-4070 (8th Dist.), where the defendant, fleeing the police, "was pulling out plastic baggies, tearing them open, and throwing them in the air, which created a large cloud of suspected fentanyl." *Id.* at ¶ 2. "The police skimmed the gray powder from the snow and put it into plastic vials; however, because some snow got in that then melted, the lab analysis was done on the gray liquid that had formed." *Id.* at ¶ 3. The forensic scientist who analyzed the gray liquid testified that it tested positive for fentanyl and what its weight was, but "the amount of fentanyl was not separated out." *Id.* at ¶ 5. The sufficiency of this evidence to prove the weight of the fentanyl was challenged on appeal.

{¶30} The court of appeals explained the situation as follows:

> Typically, the state recovers drugs and their associated compounds, but the state normally is not associated with "creating" them. Here, it is the "creation" of the overall weight of the mixture, with the inclusion of the melted snow, that is problematic. Although arguably it is appellant's conduct in discarding the drugs into the snow that caused the problem, historically weight has been based on the defendant's choice of drugs combined with the defendant's cutting agents and compounds. Ultimately, it is for the legislature to

Case No. 2024-P-0075

determine if it wishes to punish offenders for discarding drugs and complicating the recovery and subsequent weighing process.

*Id.* at ¶ 19.

{¶31} The court in *Bilah* concluded that the evidence was insufficient to sustain the charges. The court noted:

> Although the state points to other evidence presented at trial, which among other evidence included photographs of the gray fentanyl in the snow and testimony that only "a minor amount of the snow" was collected, the forensic scientist testified the weight of the contents in the vials included the fluid and that there was no way to know if the vials had a little more than a trace of fentanyl in them. We cannot speculate as to the amount [of] fentanyl that was in the vials.

*Id.* at ¶ 21; *accord State v. Spencer*, 2017-Ohio-456, ¶ 46-48 (4th Dist.) (where the heroin submitted by analysis was inseparably attached to its plastic wrapping there was insufficient evidence to determine the weight of the heroin).

{¶32} We find *Bilah* distinguishable from the present case. In *Bilah* the fentanyl mixed with the melted snow to create a gray liquid in which the fentanyl and snow were indistinguishable. Any estimation of the amount of fentanyl relative to the snow was purely speculative and, therefore, the issue was characterized as one of sufficiency. In the present case, the crystalline substance (the methamphetamine) is visually distinguishable from whatever foreign material (the brown specks or flecks) that were included in the submissions. The question of whether the foreign material contributed more than 4.20 grams to the aggregate weight of the crystalline substance (or 21.875 percent of the aggregate weight of 19.20 grams) could be considered in light of the physical evidence without undue speculation. As acknowledged by Peterson, the issue is not the purity of the methamphetamine but to what extent the foreign material contributed to the overall weight. Stated otherwise, the issue raised by Peterson in the

Case No. 2024-P-0075

present case involves the weight rather than the sufficiency of the evidence. Though visible, the specks and flecks were not substantial compared to the amount of methamphetamine. Moreover, the amount of crystalline substance that was actually collected was only a portion what was found in the vehicle and on the road. The jury could readily conclude (as it did) that the weight of the foreign material did not significantly contribute to the overall weight of the methamphetamine submitted for analysis. Accordingly, a reasonable jury could conclude that the amount of methamphetamine recovered exceeded five times the bulk amount.

{¶33} The first assignment of error is without merit.

### Second Assignment of Error: Manifest Weight of the Evidence

{¶34} The term "'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. "[W]hen an appellate court reviews whether a judgment is against the manifest weight of the evidence, the court looks at the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"" (Citations omitted.) *State v. Jordan*, 2023-Ohio-3800, ¶ 17. "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *Id.* Nonetheless, "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

Case No. 2024-P-0075

***Tampering with Evidence***

{¶**35**}  In order to convict Peterson of aggravated possession, the state was required to prove that he, "knowing that an official proceeding or investigation is in progress, … [a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."  R.C. 2921.12(A)(1).

***Whether Peterson's Conviction is Against the Weight of the Evidence***

{¶**36**}  Peterson maintains that Officer Wise's testimony that he was throwing drugs out of the vehicle during the pursuit is neither credible nor corroborated by other evidence.  He claims no other officers saw drugs being thrown from the vehicle; Wise's dashcam does not record drugs being thrown from the vehicle ("at most, you can only see Mr. Peterson's hand outside the open window"); Wise exaggerated the speeds traveled during the pursuit; an open window and high speeds would draw loose items, such as plastic baggies, out of the window; and Summit and Prospect Streets remained unsecured until officers arrived allowing for the possibility of the drugs found being unrelated to Peterson's conduct.

{¶**37**}  We find all these points undermined by the evidence in the record.  Officer Wise's testimony was credible.  He identified in real time where Peterson was disposing of the drugs so that other responding officers were on scene well before the pursuit concluded.  Officer Dynys almost immediately found the baggie containing fentanyl on Prospect Street.  It took Officer Mohler about a half an hour to locate the loose methamphetamine on Summit Street, but he was on the scene shortly after Wise reported Peterson's activity.  Wise's dashcam video does depict plastic baggies as well as other

material being thrown from the vehicle Peterson was operating. Officer DeHoff, who participated in the pursuit of Peterson until its conclusion, testified that he saw a baggie "going across the road" and heard what sounded like "little rocks" hitting his police cruiser. Finally, there was methamphetamine scattered throughout the vehicle after the pursuit clearly suggesting that Peterson had been opening baggies and trying to dispose of the methamphetamine during the course of the pursuit. The weight of evidence weighs heavily in favor of the conviction for tampering with evidence.

{¶38} The second assignment of error is without merit.

### Third Assignment of Error: Admissibility of Relevant Evidence

{¶39} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). "All relevant evidence," defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," "is admissible." Evid.R. 401 and 402. Relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury," and "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(A) and (B). "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." *Rigby* at 271.

Case No. 2024-P-0075

### Motions in Limine and Plain Error

{¶40} "[A]n order denying a motion in limine is a preliminary ruling about an evidentiary issue that is anticipated, and the issue is preserved only by a timely objection when the issue is actually reached during the trial." (Citation omitted.) *State v. Brunson*, 2022-Ohio-4299, ¶ 25. An appellate court applies a plain-error standard of review when the movant fails to renew their objections when the evidence is introduced at trial. *Id.*; *State v. Frazier*, 2007-Ohio-5048, ¶ 133 ("the defense did not renew its objections at trial to the introduction of evidence … and thus waived all but plain error"); Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

### Whether the Trial Court Erred by Admitting Evidence of Fentanyl

{¶41} "Here, Mr. Peterson made an oral motion in limine prior to the start of trial regarding the exclusion of any mention of fentanyl and/or xylazine found by Officer Dynys on Prospect Street in Ravenna because Mr. Peterson was not charged with possession and/or trafficking in fentanyl and thus it was not evidence of any crime allegedly perpetrated by Mr. Peterson." It was further argued "that any mention of fentanyl would only serve to inflame the jury and color their view of Mr. Peterson." Appellant's brief at 16.

{¶42} Peterson failed to renew his objection to the introduction of evidence of fentanyl at the time Officer Dynys testified regarding its discovery or when Lewis testified regarding its identity. Instead, he renewed the motion in limine after the defense had rested. Accordingly, he has waived all but plain error. Regardless, we find neither plain error nor an abuse of discretion.

Case No. 2024-P-0075

{¶43} Although not charged with possession or trafficking of the fentanyl, it was directly relevant and probative to the charge of tampering with evidence inasmuch as he removed the fentanyl with the purpose to impair its value or availability as evidence. A conviction for tampering with evidence is sustainable where an attempt is made to destroy potential evidence regardless of whether the item's evidentiary value is established. *See*, *e.g.*, *State v. Lester*, 2008-Ohio-1255, ¶ 20-25 (8th Dist.) (conviction for tampering with evidence affirmed where the defendant swallowed a cigarette although the presence of drugs in it was never established). Additionally, the discovery of the fentanyl corroborated Officer Wise's testimony that Peterson was throwing drugs from the vehicle. There was no error in the admission of the evidence.

{¶44} The third assignment of error is without merit.

{¶45} For the foregoing reasons, Peterson's convictions for tampering with evidence and aggravated trafficking and/or possession of drugs are affirmed. Costs to be taxed against the appellant.

ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-P-0075

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against the appellant.

_____
JUDGE SCOTT LYNCH

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-P-0075